UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CRUZ VALDIVIESO FIGUERA,          CASE NO: 0:22-CV-61553-WPD

          Plaintiff,

v.

ALL VIP CARE, INC., & LIZ
VELAZQUEZ McKINNON,

          Defendants.

_____/

## DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGEMENT WITH INCORPORATED MEMORANDUM OF LAW

The Defendants, ALL VIP CARE, INC. ("VIP") and LIZ VELAZQUEZ McKINNON, ("McKinnon") (collectively referred to as the "Defendants"), in accordance with Fed. R. Civ. P. 56, and the Southern District of Florida's Local Rule 56.1(a), hereby file this Motion for Summary Judgment as to Counts I (FLSA Minimum Wage Violation), II (FLSA Overtime Wage Violation), and III (Retaliation in Violation of the FLSA) of Plaintiff, CRUZ VALDIVIESO FIGUERA's ("Cruz"), Second Amended Complaint (D.E. – 23), and as to Count I (Breach of Contract), of Defendants' Counterclaim (D.E. – 50). For the reasons below, the Defendants respectfully request that the Motion be granted, and judgment be entered in their favor.

## I.    INTRODUCTION

### A.    Cruz' FLSA Claims Against Defendants

This action arises from Cruz' unfounded allegation of violations of the Fair Labor Standards Act. 29 U.S.C. §201, et seq. (the "FLSA"), against Defendants for alleged unpaid minimum wage and overtime hours during the time Cruz contracted with VIP to perform

Caregiver[1] services to VIP clients. Cruz, however, fails show as a matter of law that she is entitled to relief under the FLSA because (1) Florida law expressly prohibits VIP to hire Caregivers as employees; and (2) Cruz is not an employee within the meaning of the FLSA, as each factor in the Eleventh Circuit's Economic Realities Test, *infra*, weigh in Defendants' favor.

VIP is a Florida licensed Nurse Registry, under the authority of Florida's Agency of Health Care Administration ("AHCA") pursuant to Fla. Stat. Chap. 400; and the Fla. Admin. Rules Chapter 59. The purpose of a Nurse Registry, in part, is *the referral of Caregivers* who are *statutorily required* to be Independent Contractors to provide health care related services to a client in their place of residence, or through staffing in facilities referred by the Nurse Registry. *See* F.A.C. 59A-18.002(10);[2] F.A.C. 59A-18.002(7); Fla. Stat. §400.506(6)(a).

Cruz is such an Independent Contractor Caregiver, as she is a qualified licensed Home Health Aide retained by a client after the Defendants facilitated the introduction of Cruz to such client. Florida Law *unequivocally forbids* Nurse Registries, such as the Defendants, from hiring their Caregivers as employees—Cruz and all Caregivers referred by a Nurse Registry to clients *must be Independent Contractors*. *See* Fla. Stat. §400.506(6)(d).[3] The only employees that the

---

[1] "Caregiver" is defined in Fla. Administrative Code, 59A-18.002 (3) as "Caregiver" means a registered nurse, licensed practical nurse, certified nursing assistant, home health aide, homemaker or companion that is referred by a nurse registry to provide services to patients. *Id.* At all times material, Cruz was a Caregiver.

[2] "Nurse registry services" means referral of independent contractors to provide health care related services to a patient or client in the person's home or place of residence or through staffing in a health care facility by an independent contractor referred through a nurse registry. Such services shall be limited to: (a) Nursing care provided by licensed registered nurses or licensed practical nurses, or (b) Care and services provided by certified nursing assistants or home health aides, or (c) Homemaker or companion services. F.A.C. 59A-18.002(10).

[3] A registered nurse, licensed practical nurse, certified nursing assistant, companion or homemaker, or home health aide referred for contract under this chapter by a nurse registry is deemed an independent contractor and not an employee of the nurse registry under any chapter regardless of the obligations imposed on a nurse registry under this chapter or chapter 408.

2

Defendants can have are administrative staff, such as Defendant, McKinnon, along with the office staff, as none of these personnel provide any care to any person.

In addition to the express prohibition of VIP hiring Cruz as an employee, the undisputed facts show that Cruz was acting in the scope of an Independent Contractor under the Economic Realities Test. Cruz had control over the hours, conditions, and scope of work she wished to perform on VIP clients; VIP exercised minimal control over Cruz as required by Florida law; VIP did not provide supervision or evaluations of Cruz' services; Cruz was in full control of her financial opportunities and destiny; and Cruz was required to provide her own equipment and supplies; VIP is merely a referral source for clients.

Cruz' retaliation claim under the FLSA is similarly meritless. First, she is not entitled to relief under the FLSA because she is not a protected employee. Should this Court find that Cruz is an employee for purposes of the FLSA, the facts are undisputed that Cruz cannot establish a prima facie claim for retaliation. Cruz fails to show that, but for her asserting her purported rights under the FLSA, the Defendants would not have pursued their claims for breach of contract and tortious interference. Indeed, Defendants filed the separate action in good faith and based on facts unrelated to Cruz seeking damages under the FLSA. Cruz' breaches of the Independent Contractor Agreement, soliciting clients of VIP, and divulging in confidential information was from her own admitted acts, *infra*.

In light of the undisputed facts in this action, the Economic Realities Test supports the singular and only legal conclusion that the Caregivers in VIP's referral network are Independent Contractors, and therefore exempt from the FLSA. Cruz' claim for retaliation also fails as a matter of law. As such, this Court should grant summary judgment as to Counts I, II, and III of Cruz' Second Amended Complaint in favor of the Defendants.

### B.   Defendants' Breach of Contract Counterclaim

This Motion further arises from Cruz' undisputed breach of material terms of the Independent Contractor Agreement between the parties. Cruz cannot dispute that she solicited clients of the Defendants to follow her to her new job both during and immediately after the contractual term with the Defendants. Cruz further cannot dispute that she divulged confidential information to the clients during her solicitation and failed to report communications with the clients to the Defendants relating to the solicitation. These were all breaches of the material terms of the Independent Contractor Agreement between the parties. The Defendants further establish the undisputed damages flowing from Cruz' breach. In fact, two of the Defendants' clients followed Cruz to her new independent contractor engagement as a result of Cruz' breach. As such, Defendants' Motion for Summary Judgment should be granted.

## II. DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

The Defendants filed their Amended Statement of Undisputed Material Facts ("SOMF") contemporaneously with the filing of this Motion for Summary Judgment. A table of Exhibits in support of this Motion is attached hereto as Exhibit A.

## III.   STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court reviews "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Crawford v. Carroll*, 529 F.3d 961, 964 (11th Cir. 2008). The Court considers the "evidence and reasonable factual inferences drawn therefrom in a light most favorable to the non-moving party." *Id*. The moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. *Celotex Corp*. *v. Catrett*, 477 U.S. 317, 323 (1986). If

4

the movant is successful on this score, the non-moving party must then come forward with sufficient evidence to establish the existence of the elements on which she will bear the burden of proof at trial. *Id*. at 322-23. The non-moving party may not simply rest on the pleadings, but must use evidence such as affidavits, depositions, answers to interrogatories, or admissions on file to show that there is a genuine issue of material fact that remains for trial. *Id*.

## IV.   ARGUMENT

### A.   Cruz' Claims Under the Fair Labor Standards Act

Cruz' claim is based on the FLSA, and her faulty belief that she was an employee of the Defendants. By her own admission, Cruz acknowledges that she was an Independent Contractor with VIP. (SOMF ¶8-10). An "employee" is defined as "any individual employed by an employer" and is "any person acting ... in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d), (e)(1). The FLSA does not cover Independent Contractors. *Scantland v. Jeffry Knight, Inc*., 721 F.3d 1308, 1311 (11th Cir. 2013).

Cruz is *not* entitled to relief under the FLSA because, when the "Economic Realities Test" is applied to the undisputable facts of this action, this Court will find that Cruz is an Independent Contractor. Further, Florida law clearly mandates that the Plaintiff is an Independent Contractor based on who she is, the services that she provides, and her relationship with the Defendants and the client. *Id*.  The Defendants would clearly be violating Florida law if Cruz was treated as anything other than an Independent Contractor.

### i.   The 11th Circuit's Economic Realities Test clearly proves that the Plaintiff's relationship with the Defendants is that of an Independent Contractor

The protections of the FLSA extend only to "employees." *Scantland*, 721 F.3d at 1311. To determine whether a person is an Independent Contractor under the FLSA, the Eleventh

Circuit employs "Economic Realities" of the relationship between the alleged employee and employer and whether that relationship demonstrates dependence. *Id*. "No one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor—economic dependence." *Freund v. Hi-Tech Satellite*, *Inc*., 185 Fed. Appx. 782, 782 (11th Cir. 2006).

The written agreement between the parties is clearly probative of the parties' intent of their relationship and is a relevant factor for consideration by the court even though the economic realities inquiry is not governed merely by the label put on the relationship. *See Daughtrey, v. Honeywell, Inc*., 3 F.3d 1488, 1492, (11th Cir.1993) (finding the parties' intent probative, but not decisive); *Ashkenazi v. S. Broward Hosp. Dist*. No. 13-15061 (11th Cir. April 23, 2015) (D.C. Docket No. 0:11-cv-61403-JIC.).

## Written Agreement Between the Parties

While the express and clear language of the agreement between the parties under scrutiny in this litigation is not considered decisive in the independent contractor analysis, it is extremely *probative* of the parties' relationship and is a relevant factor for consideration. *Id.* Indeed, in support of the Defendants' claims, Cruz herself admits that she was an Independent Contractor with VIP. (SOMF ¶8).

Cruz entered into a written agreement with Defendant VIP which delineates that their relationship is that of an Independent Contractor and not that of an employee. [Composite Ex. D]. Not only is this Independent Contractor relationship memorialized in writing throughout the Independent Contractor Agreement, but it is consistent with the controlling authority that mandates that Cruz be an Independent Contractor and not an employee. *See* Fla. Stat. §400.506(6)(d), *et seq*. The relationship between the parties is further supported by numerous

6

other on-boarding documents wherein Cruz further acknowledged and reiterated that she was an Independent Contractor with Defendant VIP. (SOMF ¶¶10, 11, 30, 54 55). Because of the expressed obligations of the parties, VIP at no time acted as an employer to Cruz; VIP does not monitor, supervise, manage, or train the Caregivers. (SOMF ¶¶34–40). Further, Cruz was registered as an Independent Contractor through a 1099 tax form. (SOMF ¶12).

Accordingly, this Court should give significant deference to these documents wherein the Plaintiff clearly entered into an Independent Contractor relationship with the Defendants.

## **Economic Realities Test**

Several factors guide the Economic Realities Test, namely:

(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; [and] (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Scantland*, 721 F.3d at 1311-12.

These factors are not exhaustive, controlling, or dispositive; while they serve as guides, the overarching focus of the inquiry is economic dependence. *Id.* at 1311. While these factors are important, the overarching focus of the inquiry is economic dependence, or in other words, whether the individual is "in business for himself" or is "dependent upon finding employment in the business of others." *Id.* at 1312; *Freund*, 185 Fed. Appx. at 782. These factors are used because they are "indicators of economic dependence . . . . [T]he weight of each factor depends on the light it sheds on the [alleged employee's] dependence (or lack thereof) on the alleged employer, which in turn depends on the facts of the case." *Antenor v. D & S Farms*, 88 F.3d 925, 932-33 (11th Cir. 1996).

The Defendants sufficiently demonstrate that, when the material and undisputed facts of the relationship between Cruz and the Defendants are applied to the six factors in the "Economic Realities Test," the relationship between Cruz and the Defendants is that of an Independent Contractor, as the Cruz is in business for herself. *See Freund*, 185 Fed. Appx. at 782.

**First Factor**: *The nature and degree of the alleged employer's control as to the manner the work is to be performed ("Control Factor")*.

Under the first factor, "[c]ontrol arises when the purported employer goes beyond general instructions and **begins to assign specific tasks**, to **assign specific workers**, or to take an overly active role in the **oversight of the work**." *Diego v. Victory Lab, Inc*., 282 F.Supp.3d 1275, 1281 (S.D.Fla., 2017) (citing, *Aimable v. Long & Scott Farms*, 20 F.3d 434, 441 (11th Cir. 1994)). (Emphasis Added).

"For more than forty (40) years, the United States Department of Labor, Wage and Hour Division ["WHD"] has maintained that a [Nurse] Registry that performs only referral and payroll services is not an employer of the Caregivers whom it refers." *See* United States Department of Labor, Wage and Hour Division, published their Field Assistance Bulletin, No. 2018-4, on July 13, 2018, titled "Determining Whether Nurse or Caregiver Registries are Employers of the Caregiver." ("FAB"), a copy of which is attached hereto as Exhibit J.

Here, it is undisputed that Cruz is able to accept or reject to perform services on clients. (SOMF ¶¶21-23, 27, 28). The client is free to accept or decline the offers of Cruz and Cruz is free to accept or decline the offers of the client. (SOMF ¶¶21-23). While VIP provides to Caregivers the hours the clients have authorized for treatment, it is ultimately the client and the client's health insurer that authorizes hours Cruz was able to work, not the Defendants. (SOMF ¶¶14-17). VIP merely facilitates the hours authorized for Cruz' choosing. (SOMF ¶32, 48). The

client is the one who confirms that the Caregiver did her job by signing off on the timesheet, and VIP simply bills the appropriate third party and invoices the client signed off. (SOMF ¶20). The requirement to log accurate hours was so that the authorized payments from the client's insurer are properly made to the corresponding client-approved hours. (SOMF ¶17-19). As such, the Defendants are not the Cruz' employer.

Importantly, VIP does not monitor, supervise or manage the work, behavior, or scheduling of the Caregivers. (SOMF ¶¶34-40). VIP also does not train the caregivers, and Cruz' training came from her own HHA licensing requirements. (SOMF ¶38, 41). By her own admission, VIP "never asked anything of [Cruz]" throughout the contracting relationship. (SOMF ¶ 46). Cruz received no performance reviews during her engagement with VIP. (SOMF ¶ 40, 34). Neither did the Defendants discipline Cruz. (SOMF ¶¶37-38). Cruz was in full control of her quality and scope of work. (SOMF ¶ 27).

VIP does not even have the power to fire its caregivers. Cruz "determines[s] if [she] wants to continue [the relationship with a client] or not." (SOMF ¶27). The clients "also have the right [to terminate relationship with Cruz]. They decide if they want to be with the [home health aide] or not." (SOMF ¶28. The only time VIP terminates a client relationship is in very limited circumstances, such as fraudulent billing or if the Caregiver's license is voided by the State. (SOMF ¶31). Even in those circumstances, VIP had to confirm with the client to terminate the relationship.

VIP did not even prevent Cruz from having other employment or contractual relationships. (SOMF ¶34). Cruz is also responsible for her own liability insurance. (SOMF ¶33). Simply put, the Defendants do not control the relationship with Caregivers, who are independent contractors as required by law. Cruz is free to work for whom she wants and under the terms and

conditions that she negotiates for herself. This lack of control, along with the foregoing analysis, together with Cruz' own written acknowledgement clearly demonstrates that the Plaintiff was an Independent Contractor of the Defendants and not an employee, as she was her own separate entity.

**Second Factor**: *The alleged employee's opportunity for profit or loss depending upon her managerial skill ("Opportunity for Profit or Loss Factor").*

In evaluating the second factor, the Court "considers the alleged employee's opportunity for profit or loss depending upon [the employee's] managerial skill." *Scantland*, 721 F.3d at 1316. This factor indicates independent-contractor status where the opportunity for profit or loss is dependent on managerial skills "such as initiative, judgment and foresight." *Artola,* 2015 WL 12672722, at *7.

At all times, and as detailed above, Cruz was in full control of her financial opportunities and destiny. Cruz was under no restrictions or limitations by the Defendants and was free to negotiate her own relationships including financial arrangements with potential clients. (SOMF ¶ 16, 24, 34). Cruz had to rely on her judgment and foresight in accepting or rejecting client hours, could seek other opportunities, and was the master of her own schedule. (SOMF ¶¶21-25, 27-28).

In *Scantland*, 721 F.3d 1317, the Court noted that where the plaintiffs were limited by the Defendants in using their own initiative to advance themselves it was indicative that they were employees of the Defendants. In this action, Cruz' economic advancement and dependency is in her own hands and not that of the Defendants. Here, the working relationship was strictly between the client and the Caregiver. Cruz, as the home health aide, gets to decide the scope of services that she willing to provide to these patients.  (SOMF ¶25). Rather than receiving regular

10

payments for her services, Cruz' pay was determined from the client's payor's allowable reimbursement amount for the hours worked. (SOMF ¶ 14-15). Thus, Cruz' paid rate was determined, at least in part, by the authorized hours of the client's payor. (SOMF ¶14, 19).

Cruz has substantial opportunity to realize profit and loss on the basis that she is free to *limit* her jobs by rejecting hours. She had the right to request the client's payor to modify the authorized care plan. (SOMF ¶23). This factor thus favors Cruz as an Independent Contractor.

**<u>Third Factor</u>**: *The alleged employee's investment in equipment or materials required for his task, or his employment of workers ("Investment in Equipment or Materials")*

Next, "[c]ourts may find independent contractor status when a worker invests in equipment or materials required for completing his tasks, or hires other workers to assist him in the completion of his tasks." *Dimingo v. Midnight Xpress, Inc.*, 325 F.Supp.3d 1299, 1313 (S.D.Fla., 2018) (finding that the plaintiff was an independent contractor because the plaintiff provided "his own uniform, badge, security license, and handgun").

Here, Cruz was responsible to provide own gloves, masks scrubs, and to otherwise "have [her] own supplies" in connection with her contracted services. (SOMF ¶36, 43-45). Cruz was also responsible for her own travel and gas expenses to the client's location. (SOMF ¶36). Cruz works in the clients' homes or outside facilities, rather than at VIP's location and, therefore, VIP has very little invested, if anything, in equipment and/or facilities. (SOMF ¶26). No VIP logos or markings were required to be present in Cruz' scrubs or other equipment. (SOMF ¶¶43-45). In short, VIP provided "nothing" in terms of equipment and supplies for Cruz to perform services to the client. (SOMF ¶35).

Accordingly, there is no economic dependence on the Defendants for any supplies or materials needed for the Plaintiff Caregiver to perform her duties.  This reinforces that the Cruz is an Independent Contractor. *Scantland*, 721 F.3d 1317-18.

**Fourth Factor**: *Whether the service rendered requires a special skill ("Special Skill")*.

The "utilization of initiative and the employment of special skills indicates independent contractor status." *Artola*, 2015 WL 12672722, at *8. The special skills required of Cruz to serve in her position as a Caregiver is noted in the statutory definition of "Home Health Aide" defined in Fla. Stat. §400.462(15).  The fact that special skills are required of Cruz favors the finding that the Plaintiff was an Independent Contractor.  *Scantland*, 721 F.3d 1318.

Further, the training and certification required for Cruz to serve as a Home Health Aide is paid for by Cruz, not the Defendants, unless required by law. (SOMF ¶38). Cruz was engaged because of her HHA license and experience and training to apply her special skills in the treatment of clients. (SOMF ¶¶6, 7, 41). As Home Health Aide, Cruz was required to maintain various certifications and licenses that are essential to her job. (SOMF ¶41). The Defendants business is that of a Nurse Registry, not providing care for clients and the Defendants outsourced all client care to Caregivers like Cruz.  Additionally, the Defendant as a Nurse Registry is not obligated to monitor, manage, train, or supervise a Home Health Aide. *See* Fla. Stat. §400.506(19); F.A.C. 59A-18.0081(15).   Accordingly, this factor supports that Cruz is an Independent Contractor.

**Fifth Factor**: *The degree of permanency and duration of the working relationship ("Permanency and Duration")*

The relationship between the Plaintiff and the Defendants is that of an Independent Contractor.  "Generally, a longer, more permanent working relationship weighs toward employee

12

status . . .." *Dimingo*, 325 F.Supp.3d at 1313. Cruz merely worked with VIP for approximately a year (SOMF ¶57) and has already contracted with another nurse registry within months following the termination of the parties' contractual relationship. (SOMF ¶¶58, 63). Cruz' conduct shows the economic reality of her arrangement with Defendants is that of an Independent Contractor, as Cruz had a limited degree of permanency of the working relationship.

Further, the Defendants place no restrictions preventing from working with other Nurse Registries or other companies and Cruz is not required to work any specific days or times. (SOMF ¶¶21-23, 27, 30). Cruz' economic growth, permanency and duration is in her own hands and not that of the Defendants. As such, she was an Independent Contractor.

**Sixth Factor**: *The extent to which the service rendered is an integral part of the alleged employer's business ("Integral Part of Alleged Employer's Business")*.

"The more integral the service, the more likely the worker is an employee." *Artola*, 2015 WL 12672722, at *10. The Defendants business is that of a Nurse Registry, not providing care for clients.  "Caregiving" itself is not integral to VIP's business, which performs the wholly administrative task of referring independent caregivers to clients. (SOMF ¶¶32, 48). Cruz as a Home Health Aide and Caregiver is charged with that responsibility once Cruz enters in a relationship with the client. (SOMF ¶¶13, 16, 25, 47). VIP merely "serves as a middleman between [Cruz] and the client" and the client's insurance company. (SOMF ¶35). In other words, the Defendants outsourced all client care to Independent Contractor Caregivers like Cruz.

In *Scantland*, 721 F.3d 1317-1318, the Court noted that if the Defendants had outsourced a large portion of its business then the plaintiffs were Independent Contractors. *Id.*  Here the significant majority of the Defendants' business was facilitating the introduction of clients with

Caregivers, like Cruz.[4]   Further, unlike in *Scatland*, VIP outsources much more than Home

Health Aides like Cruz. VIP also connects healthcare professionals, such as registered nurses, to

clients for treatment. (SOMF ¶5). Cruz' services are, if anything, an ancillary part of VIP's

business. As such, in accordance with *Scantland*, Cruz is an Independent Contractor.

The application of the Economic Realities Test to the facts in the case at bar clearly

supports that Cruz is an Independent Contractor and not an employee of the Defendants. As

such, the Defendants Motion for Summary Judgment should be granted.

> **ii.     The Defendants are entitled to a judgment as a matter of law, as the**
> **Defendants are statutorily barred by law from having Cruz as an employee**

It is unequivocally clear that Defendant VIP is a certified and licensed Nurse Registry,

under the authority of Florida's Agency of Health Care Administration ("AHCA"). (SOMF ¶1).

A copy of their certification is attached hereto as <u>Exhibit C</u>. Under Fla. Stat. §400.462(21) a

"Nurse Registry" is defined as,

> any person that procures, offers, promises, or **attempts to secure health-care-related contracts** for registered nurses, licensed practical nurses, certified nursing assistants, **home health aides**, companions, or homemakers, who are **compensated by fees as Independent Contractors**, including, but not limited to, contracts for the provision of **services to patients** and contracts to provide private duty or staffing services to health care facilities licensed under chapter 395, this chapter, or chapter 429 or other business entities.

*Id*. (Emphasis Added).

As a Nurse Registry, Defendant VIP is clearly and expressly forbidden by Fla. Stat.

§400.506(6)(d) from having their Caregivers, which includes Home Health Aides ("HHA") like

Cruz as employees. According to AHCA, under Florida law, a nurse registry cannot have any

---

[4] The Defendants by statutory definition and practical application only refers Independent Contractors, like the Plaintiff, who are capable of delivering services for a patient/client. F.A.C. 59A-18.010(2);[4] [FAB, section I (A), Ex. J]

employees except for the "administrator and office staff," and "[a]ll individuals who enter the home of clients to provide direct care must be independent contractors." *See Agency for Health Care Administration, Frequently Asked Questions Nurse Registries*: *What is a nurse registry?* https://www.homehealthaideguide.com/hha-training/states/florida-hha/.

It is undisputed that the Cruz is an HHA, as defined in Fla. Stat. §400.462(15),[5] as she repeatedly identified herself as an HHA (SOMF ¶2), was trained as an HHA (SOMF ¶41), and maintains an HHA license with the State of Florida (SOMF ¶2).  As a Home Health Aide, F.A.C. 59A-18.002(3) defines that Cruz as a "Caregiver."[6]  At all times material to the action the Cruz's duties and performance on behalf of her client were in conformity with the duties and responsibilities of the position of Home Health Aide.

It is also undisputed that VIP is a licensed nurse registry. (SOMF ¶1).  Under AHCA, VIP does not have the power to fire any caregivers. In the event of a violation of any law or regulation by a caregiver, or a deficiency in credentials, VIP is required by law to: advise the client to terminate the caregiver's services; to cease referring the caregiver to other clients or facilities; and, if practice violations are involved, to notify the licensing board. *See* Fla. Stat. §§ 400.462; 400.506. Simply put, VIP does not control the relationship with the caregivers, who are independent contractors as required by law.

---

[5] "**Home Health Aide**" means a person who is trained or qualified, as provided by rule, and who provides hands-on personal care, performs simple procedures as an extension of therapy or nursing services, assists in ambulation or exercises, or assists in administering medications as permitted in rule and for which the person has received training established by the agency under s. 400.497(1).

[6] 59A-18.002(3) F.A.C. defines "Caregiver" as a registered nurse, licensed practical nurse, certified nursing assistant, home health aide, homemaker or companion that is referred by a nurse registry to provide services to patients.  (Emphasis Added.)

As such, this Court should find that Cruz was an Independent Contractor and not an employee of the Defendants and grant summary judgment in favor of the Defendants.

**B.  Cruz' Retaliation Claim Fails as a Matter of Law**

Cruz further asserts a baseless claim for retaliation under the FLSA against the Defendants. In light of the undisputed facts, Cruz' retaliation claim fails as a matter of law because she is an independent contractor, *supra,* and thus is not covered by FLSA protection. Even if this Court finds Cruz as an independent contractor under the FLSA, Cruz fails to establish a prima facie case of retaliation from the Defendants' sound action against Cruz.[7]

Under the FLSA, it is "unlawful for any person ... to discharge ... [an] employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). To prevail on a retaliation claim, Cruz must first establish a prima facie case of retaliation. *Raspanti v. Four Amigos Travel, Inc.*, 266 Fed. Appx. 820, 2008 WL 227590 (11th Cir.2008).

A prima facie case of FLSA retaliation requires a demonstration by Cruz of the following: "(1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Wolf v. Coca–Cola Co.*, 200 F.3d 1337, 1342–43 (11th Cir.2000). In demonstrating causation, Cruz must prove that the adverse action would not have been taken "but for" the assertion of FLSA rights. *See Reich v. Davis*, 50 F.3d 962, 965–66 (11th Cir.1995).

---

[7] The action was filed in the 17th Judicial Circuit in and for Broward County, Florida, Case Number CACE22-013991, and styled *All VIP Care, Inc., v. Cruz Valdivieso Figuera*. *See* Ex. K. (hereinafter referred to as, the "Broward County Action"). Defendants' filed claims for breach of contract, violation of Fla. Stat. § 542.335, and tortious interference. *See id.*

16

Here, as explained fully above, Cruz is not entitled to relief under her claim for retaliation under the FLSA because Cruz was at no time an employee of the Defendants. Thus, Cruz' retaliation claim fails as a matter of law because she was not engaged in a protected activity under the Act, as she was an independent contractor at all material times of this action.

Even if this Court finds that Cruz' economic reality is that of an employee under the FLSA, Cruz fails to show that, but for Cruz filing her FLSA claims against the Defendant, that the Defendants would not have pursued their action for breach of the Independent Contractor contract for soliciting the Defendants' clients and divulging confidential secrets of VIP to the clients. (SOMF ¶59). The Defendants filed their claims in good faith. Cruz acknowledged that she "took" at least two of the Defendants' clients to Cruz' new job.  (SOMF ¶67). It is undisputed that Cruz was bound to the terms of the Independent Contractor Agreement, which included obligations not to solicit clients of VIP, to report instances of such solicitation, and to refrain from disclosing confidential information. (SOMF ¶¶54-55). It is further undisputed that Cruz breached these provisions, *infra*. In fact, Cruz even admits to causing these clients to "switch" agencies. (SOMF ¶63).

The Defendants did not file the Broward County Action until months after Cruz asserted FLSA violations and months after Cruz' departure from servicing clients with VIP.[8] (Ex. K; Composite Ex. L; SOMF ¶58). There is no colorable argument that Defendants filed the Broward County Action as a result of Cruz' claims for unpaid overtime hours under the FLSA—the Defendants brought the action in good faith from Cruz' malfeasance unrelated to the alleged FLSA violations. *See, e.g., Urquiola v. Linen Supermarket, Inc.*, 1995 WL 266582, at *1

(M.D.Fla. 1995) ("an employer is not precluded from filing a defamation suit to vindicate his reputation if the suit is brought in good faith.").

Because Cruz is an independent contractor, she is not entitled to relief for her retaliation claim under the FLSA as a matter of law. Even if this Court deems Cruz as an independent contractor, Cruz fails to establish a causal relationship between the asserted adverse act and Cruz seeking relief under the FLSA through the instant action. As such, this Court should grant summary judgment in favor of the Defendants as to Cruz' retaliation claim under the FLSA.

**C.  The Defendants' are Entitled to Summary Judgment as to Their Breach of Contract Claim Against Cruz**

This Court should grant summary judgment as to Defendants' breach of contract claim against Cruz, as Defendants establishes: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1301 (S.D. Fla. 2012) (quoting *Vega v. T-MobileUSA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009)). It is a fundamental principle of Florida contract law that a material breach by one party excuses the performance by the other. *Partners Biomedical Solutions, LLC v. Saltsman*, 2021 WL 4244861, at *6 (S.D.Fla., 2021) (quoting, *Indemnity Ins. Corp. of DC. v. Caylao*, 130 So.3d 783, 786 (Fla. 1st DCA 2014)). A "material breach" is one that goes "to the essence of the contract," as opposed to the mere failure to perform some minor part of the contract. *Id.* (quoting, *Covelli Family, L.P. v. ABG5, L.L.C.*, 977 So.2d 749, 752 (Fla. 4th DCA 2008)).

---

[8] The undersigned was substituted as Counsel for the Defendants in the Broward County Action (Composite Ex. L). Pursuant to the Court's order approving that the claims be counterclaims of the Defendants, the undersigned promptly dismissed the Broward County Action. *Id.*

First, it is undisputed that a contract exists between the parties. (Composite Ex. D). The Independent Contractor Agreement is a valid contract that memorializes the agreement between the parties. *See AmeriPath, Inc. v. Wetherington*, 2011 WL 1303804, at *4 (S.D.Fla.,2011). Next, Cruz acknowledges that she breached a material term of the Independent Contractor Agreement. The Independent Contractor Agreement provided that Cruz was "strictly prohibited from transferring or attempting to transfer any client case to another nurse registry agency or facility." (SOMF ¶55).

Cruz breached the Agreement in multiple respects. Immediately after the termination of the contractual relationship with the Defendants, Cruz solicited the Defendants' nurse registry clients, Y.I and C.I., to join her new independent contractor arrangement with another nurse registry. (SOMF ¶¶63-65). Not only did she contact those clients within the restrictive period of one (1) year, Cruz also acknowledges that those clients communicated their desire to leave VIP and follow Cruz to her new job. (SOMF ¶65). Cruz failed to notify the Defendants of this fact. This was a breach of the material terms of the contract. Cruz acknowledges that she solicited another client of the Defendants, A.G.M., to attempt to convince her to follow Cruz to her new job. (SOMF ¶¶66-67). This is yet another breach of the material terms of the contract. Cruz also divulged confidential information to Y.I., C.I. and A.G.M., and acknowledged that she would complain to VIP clients about the payment and work hours process of VIP. (SOMF ¶¶61-62, 64).

Defendants suffered damages in the form of lost business from the solicitation and removal of clients of the Defendants. (SOMF ¶68). It is undisputed, as Cruz even admits to same, that she was the reason behind Y.G. and C.I.'s removal as client of VIP to Cruz' new independent contractor job. (SOMF ¶67). The lost business the Defendants suffered sufficiently establishes the damage requirement of the Defendants' breach of contract claim. Cruz' divulging

of confidential information also led to reputational damages towards the Defendants. (SOMF ¶69).

The undisputed facts show that Cruz breached material terms of the valid Independent Contractor Agreement by soliciting clients of VIP to follow Cruz to her new job, divulging of confidential information, and failing to report communications regarding client solicitation. Further, it is undisputed that the Defendants suffered damage as a result of the breach in the form of lost business and reputational harm. This Court should therefore grant summary judgment in favor of Defendants.

<u>**CONCLUSION**</u>

Even in the light most favorable to Cruz, the Defendants have unequivocally demonstrated that the economic reality of Cruz' arrangement with the Defendants was that Cruz was in the business for herself and was an Independent Contractor to the Defendants. Further, as a Nurse Registry, the Defendants are forbidden by Florida Law from having their Home Health Aide/Caregivers, such as Cruz, as employees they <u>must be Independent Contractors</u>.  To do otherwise, the Defendants would be in violation of their state issued license and controlling statutes.  Further, the undisputed facts further show that Cruz' retaliation claim fails. As such, the Defendants respectfully request that this Court grant the Defendants' Motion for Summary Judgement as to Cruz' claims against the Defendant under the FLSA.

Defendants further establish the sufficient undisputed facts that Cruz breached the Independent Contractor Agreement between the parties resulting in damages suffered by the Defendants. Cruz even acknowledges that she solicited VIP clients and brought those clients to her new engagement with another nurse registry. Accordingly, this Court should grant summary judgment in favor of the Defendants.

Respectfully submitted:

*/s/ RANDY M. GOLDBERG, ESQUIRE*
Florida Healthcare Law Firm
151 NW 1st Avenue
Delray Beach, FL 33444
754-224-0867
FBN: 045187
randy@floridahealthcarelawfirm.com
randymgoldberg@gmail.com

## **CERTIFICATION OF SERVICE**

I hereby certify that a copy of this pleading which was filed with the Clerk of the Court was provided to Brian Pollock, Esq., Counsel for Plaintiff, at 135 San Lorenzo Ave., Ste. 770, Coral Gables, FL 33146, brian@fairlawgroup.com via the Court's ECM/ECF Portal on July 14, 2023.

*/s/ RANDY M. GOLDBERG, ESQUIRE*
Florida Healthcare Law Firm
151 NW 1st Avenue
Delray Beach, FL 33444
754-224-0867
FBN: 045187
randy@floridahealthcarelawfirm.com
randymgoldberg@gmail.com