UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CRUZ VALDIVIESO FIGUERA,                    CASE NO: 0:22-CV-61553-WPD

         Plaintiff,

v.

ALL VIP CARE, INC., & LIZ
VELAZQUEZ McKINNON,

         Defendants.
_____/

**DEFENDANTS' AMENDED STATEMENT OF UNDISPUTED**
**MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

The Defendants, ALL VIP CARE, INC. ("VIP") and LIZ VELAZQUEZ McKINNON, ("McKinnon") (collectively, "Defendants"), pursuant to Fed. R. Civ. P. 56 and the Southern District of Florida's Local Rule 56.1(a) hereby file and submit their Statement of Undisputed Material Facts in support of its Motion for Summary Judgment and states as follows:

1. VIP is licensed and certified Nurse Registry in the State of Florida, under license number 299995738. [VIP License, Ex. B; Deposition of McKinnon, Ex. F, p. 36 ln. 9-12].

2. The Plaintiff, Cruz Valdivieso Figuera ("Cruz"), is a licensed "Home Health Aide" with the State of Florida. [Deposition of Cruz, Ex. D, at p. 12 ln. 24-25, p. 19 ln. 11-13].

3. Defendant, Liz Velazques McKinnon ("McKinnon"), is the corporate representative and owner of VIP. [Deposition of McKinnon, Ex. F, at p. 7 ln. 5, p. 12 ln. 15-18].

4. Diana Ramirez ("Ramirez") (not a party to this action) is an administrator for VIP's Broward office. [Deposition of Ramirez, Ex. E, at p. 16 ln. 7; Deposition of McKinnon, Ex. F, at p. 11 ln. 5-8].

1

5. VIP hires individuals who perform medical services to clients, such as registered nurses, and others to perform non-medical services to clients, such as Home Health Aides. [Deposition of McKinnon, Ex. F, at p. 14 ln. 2-17].

6. Cruz was engaged by VIP to perform services as a Home Health Aide on May 3, 2021. [Deposition of Cruz, Ex. D, at p. 14 ln. 14-16; p. 28 ln. 22; Independent Contractor Agreement at 000005, Composite Ex. C].

7. Cruz acknowledged and agreed that she is an independent contractor working for VIP. [Independent Contractor Agreement at 000001, 000012, Composite Ex. C; Deposition of Ramirez, Ex. E, at p. 50 ln. 20-23].

8. Cruz admits that "[she was] an independent contractor" with VIP. [Deposition of Cruz, Ex. D, at p. 33 ln. 13-17].

9. Cruz signed her name and the initials to her name in all applicable portions of the Independent Contractor Agreement between Cruz and VIP. [Independent Contractor Agreement, Composite Ex. C].

10. Page 000012 of the Independent Contractor Agreement provides,

> [Cruz] is retained and contracting with [VIP] **only for the purposes and to the extent set forth in this Agreement** and corresponding job description, and his/her relation to [VIP] and its subsidiary companies shall, **during the period or periods of providing services hereunder, be that of an independent contractor.**

[Independent Contractor Agreement at 000012, Composite Ex. C]. (Emphasis Added).

11. Cruz signed her initials next to the following provision: "I hereby acknowledge that I am an Independent Contractor working for the registry. . . I am a subcontractor of the registry." [Independent Contractor Agreement at 000005, Composite Ex. C].

12. During her time working with VIP, Cruz received 1099 tax forms from VIP that identified her as an independent contractor. [Deposition of Cruz, Ex. D, at p. 33 ln. 6-9; Deposition of McKinnon, Ex. F, at p. 122 ln. 10-11].

13. Cruz' contracted hourly rate was $13.00 per hour of work she agreed to accept to service clients. [Deposition of Cruz, Ex. D, at p. 28 ln. 9-12; Deposition of Ramirez, Ex. E, at p. 42 ln. 16].

14. Cruz' pay was determined from a payor allowable reimbursement amount and Cruz is only paid if a client or the client's payor pays for the services, as opposed to a regular weekly payment schedule. [Deposition of Ramirez, Ex. E, at p. 95 ln. 11-16; Deposition of McKinnon, Ex. F, at p. 51 ln. 12-18].

15. To receive payment the hours worked for her services, Cruz was required to receive authorization from a client's payor prior to working those hours. [Deposition of Ramirez, Ex. E, at p. 95 ln. 11-16].

16. The client or client payor authorization is part of the contract between Cruz and the client. [Deposition of McKinnon, Ex. F, at p. 27 ln. 13, p. 53 ln. 21-23].

17. The client's payors "limit the number of visits that their clients have with all VIP caregivers," and determine the hours that a client is authorized to provide a service, not VIP. [Deposition of Ramirez, Ex. E, at p. 51 ln. 6-11; Deposition of McKinnon, Ex. F, at p. 19 ln. 22-25, p. 20 ln. 19-21, p. 39 ln. 9-12].

18. Cruz, and not the Defendants, provides the client with the timesheet for the client's signature and authorization. [Deposition of McKinnon, Ex. F, at p. 39 ln. 9-12, p. 40 ln. 13-17].

19. The requirement to log accurate hours was so that the authorized payments from the client's insurer are properly made to the corresponding client-approved hours. [Deposition of Ramirez, Ex. E, at p. 52 ln. 12-19].

20. As soon as VIP receives a timesheet from a Caregiver, such as Cruz, VIP sends the timesheet to the client's payor for payment. [Deposition of McKinnon, Ex. F, at p. 20 ln. 5-7].

21. Cruz has the right to accept or reject her hours to provide services to VIP clients. [Deposition of Cruz, Ex. D, at p. 27 ln. 12-14, p. 33 ln. 6-9; Deposition of Ramirez, Ex. E, at p. 45 ln. 1-10].

22. Cruz had the right to refuse to accept a particular job from VIP to provide services to VIP clients. [Deposition of Cruz, Ex. D, at p. 28 ln. 3-5; Deposition of Ramirez, Ex. E, at p. 64 ln. 2-13].

23. Cruz has the ability to ask the client's payor to modify the authorized care plan. [Deposition of McKinnon, Ex. F, at p. 21 ln. 5-7].

24. Clients that Cruz served had the option to pay Cruz directly, but the clients ultimately chose to set an account with VIP for payment of Cruz' services because paying Caregivers directly "becomes too messy." [Deposition of McKinnon, Ex. F, at p. 39 ln. 1-4, p. 55 ln. 16-22].

25. As the Home Health Aide, Cruz has the ability to decide the scope of services that she is willing to provide to the patients. [Deposition of Cruz, Ex. D, at p. 22 ln. 2-5].

26. As the Home Health Aide, Cruz performed services on VIP clients either at the client's home or at another location not in VIP's facility, such as a hospital or assisted living facility. [Deposition of McKinnon, Ex. F, at p. 13 ln. 17-23].

27. Cruz has the ability to terminate a relationship with a client and determines herself if she "wants to continue or not." [Deposition of Cruz, Ex. D, at p. 22 ln. 2-5].

28. The clients "also have the right [to terminate relationship with Cruz]. They decide if they want to be with the [home health aide] or not" [Deposition of Cruz, Ex. D, at p. 22 ln. 19-25].

29. The only instances where Cruz had to inform VIP of not being able to make it to a scheduled service were for appointments that Cruz already accepted so that there can be a "substitute to fill in those hours," so that VIP knows who is caring for the patient if "something happens, [VIP] knows who's there." [Deposition of Ramirez, Ex. E, at p. 116 ln. 18-25, p. 117 ln. 13-16 ln. 1-10].

30. Cruz signed her initials next to the following provision: "[Cruz] will accept assignments on a case-by-case basis and [Cruz] may accept or reject any assignment offered by [VIP]." [Independent Contractor Agreement at 000007, Composite Ex. C].

31. VIP can terminate a client assignment with a contracted Home Health Aide, such as Cruz, in very limited circumstances, such as fraudulent billing. [Deposition of Cruz, at p. 114 ln. 18-25.

32. VIP merely "serves as a middleman between [Cruz] and the client" and the client's insurance company. [Deposition of McKinnon, Ex. F, at p. 33 ln. 23-25].

33. Cruz was responsible for paying for her own professional liability policy while engaged by VIP. [Deposition of McKinnon, Ex. F, at p. 28 ln. 14-15; Independent Contractor Agreement at 000025, Composite Ex. C].

34. VIP did not prevent Cruz from having other employment or contractual relationships. [Deposition of Cruz, Ex. D, at p. 27 ln. 18].

35. VIP provided "[n]othing" in terms of equipment to perform Cruz' services to a client. [Deposition of Cruz, Ex. D, at p. 26 ln. 2-4; Deposition of McKinnon, Ex. F, at p. 92 ln. 15-17].

36. While engaged at VIP, Cruz had to purchase her own supplies, including gloves and masks, and had to pay for her own travel costs. [Deposition of Cruz, Ex. D, at p. 26 ln. 6-8; Deposition of Ramirez, Ex. E, at p. 96 ln. 20-25, p. 130 ln. 16-21].

37. Cruz has not received any performance evaluations from VIP during her engagement with VIP. [Deposition of Cruz, Ex. D, at p. 25 ln. 5-8].

38. VIP did not provide training to Cruz relating to the performance of Cruz' duties as a Home Health Aide at any time during her engagement with VIP. [Deposition of Cruz, Ex. D, at p. 25 ln. 9-11].

39. At all times material, VIP "[n]ever" told Cruz how to perform the services that Cruz provided to VIP's clients. [Deposition of Cruz, Ex. D, at p. 26 ln. 1].

40. While VIP does not provide performance evaluations, the VIP client that Cruz provides services to, may report how well or not she performs the services. [Deposition of Cruz, Ex. D, at p. 23 ln. 5-12].

41. In addition to her Home Health Aide licenses, Cruz is required to have her HIVA certificate, CEU, CPR certificate, and medication management certificate as required by Florida law. [Deposition of McKinnon, Ex. F, at p. 27 ln. 14-23].

42. VIP does not conduct a background check beyond what is required by the State of Florida for a nurse registry. [Deposition of Ramirez, Ex. E, at p. 20 ln. 15-17; Deposition of McKinnon, Ex. F, at p. 27 ln. 14-15].

43. VIP does not require the type of scrubs, uniform, or attire for Cruz to wear while she performs services to VIP clients and does not require Cruz to wear a uniform similar to the other contractors at VIP. [Deposition of Ramirez, Ex. E, at p. 24 ln. 1-5, 16-20].

44. Cruz as Home Health Aide is generally required to wear scrubs by the clients, however, so that Cruz can be easily identified as a Home Health Aide. [Deposition of McKinnon, Ex. F, at p. 77 ln. 1-5; Deposition of Ramirez, Ex. E, at p. 23 ln. 18-20].

45. Cruz did not have a VIP logo or name on the scrubs she wore to perform services on clients. [Deposition of McKinnon, Ex. F, at p. 77 ln. 11-14].

46. Cruz acknowledges that VIP "never asked anything of [Cruz]" throughout the contracting relationship. [Deposition of Cruz, Ex. D, at p. 30 ln. 22].

47. VIP never provided home services or care for any client. All services and care are provided by the clinical staff, Home Health Aides, or Caregivers. [Deposition of McKinnon, Ex. F, at p. 33 ln. 23-25].

48. The Defendants do provide administrative services that are ministerial in nature, which includes, but is not limited to: recordkeeping, invoicing, collecting and disbursing payments, and retention of the records, as required by the State of Florida. [Deposition of McKinnon, Ex. F, at p. 11 ln. 10-18].

49. Both McKinnon and Ramirez speak fluent Spanish. [Deposition of Ramirez, Ex. E, at p. 25 ln. 9; Deposition of McKinnon, Ex. F, at p. 64 ln. 12-16].

50. Ramirez sat with Cruz and Ms. Perez, who used to work for VIP, for "about an hour" to explain the entire Independent Contractor Agreement and application in Spanish. [Deposition of Ramirez, Ex. E, at p. 27 ln. 9-12, p. 39 ln. 11-19; Deposition of McKinnon, Ex. F, at p. 72 ln. 3-7].

51. Cruz signed her initials next to the following provision: "[m]ake sure all documents or records which [Cruz] prepare[s] contain only accurate and truthful information." [Independent Contractor Agreement at 000008, Composite Ex. C].

52. Cruz has logged hours in her time sheet that she did not work. [Affidavit of A.G.M. at 1, Ex. G; Deposition of Ramirez, Ex. E, at p. 62 ln. 18-25].

53. Cruz has logged hours in her time sheet for hours that were not authorized by the client or the client's payor. [Deposition of McKinnon, Ex. F, at p. 45 ln. 1-4, p. 56 ln. 22-24].

54. The Independent Contractor Agreement provides,

> I have read and understand the above information concerning the policies and procedures of the nurse registry. I agree to abide by the policies and procedures of the nurse registry, including personnel policies, and have been informed **that failure to do so may result in disciplinary action up to and including termination of my contract.**

[Independent Contractor Agreement at 000009, Composite Ex. C].

55. The Independent Contractor Agreement further provides,

> **During the term of my contract with the nurse registry and for a period of at least one year thereafter, I will not contact a nurse registry client, directly or indirectly**, either for his/her own account or otherwise. . . **I agree to notify the nurse registry in the event that a client attempts to arrange for services directly with me**. I agree not to accept assignment from any client of the nurse registry for a period of at least one year following my separation from the nurse registry and/or termination of my contract.
> . . .
> I understand that **I work for the nurse registry as an independent contractor** and that the clients I provide services to belong to the nurse registry or facility to which I am assigned. **I acknowledge that I am strictly prohibited from transferring or attempting to transfer any client case to another nurse registry agency or facility**.

[Independent Contractor Agreement at 000013, Composite Ex. C].

56. Cruz and VIP ended their contractual relationship during July 2022. [Deposition of Cruz, Ex. D, at p. 28 ln. 22].

8

57. Less than one year after her termination of her engagement with VIP, Cruz now works with another nurse registry, Sininani, as an independent contractor. [Deposition of Cruz, Ex. D, at p. 8 ln. 19, p. 11 ln. 19, p. 14 ln. 6-10, p. 41 ln. 24-25].

58. Months after Cruz and VIP ended their contract, and months after Cruz filed the instant action, VIP filed an action for breach of contract, violation of Fla. Stat. § 542.335, and tortious interference on October 7, 2022. [VIP Complaint in Broward County Action, Ex. J].

59. The reason why VIP filed the Broward County Action was that Cruz "took [VIP] client[s] to another agency and [Cruz] was trying to take another client." [Deposition of McKinnon, Ex. F, at p. 8-15].

60. VIP has filed other actions in the past against Home Health Aides, such as Cruz, for taking clients from VIP in breach of the agreement between VIP and the Home Health Aide. [Deposition of McKinnon, Ex. F, at p. 119 ln. 13-23].

61. During her engagement with VIP, Cruz threatened a VIP client, A.G.M., that if Cruz was not paid directly by A.G.M., she would halt her services to A.G.M. [Affidavit of A.G.M. at 1, Ex. G; Deposition of Ramirez, Ex. E, at p. 70 ln. 21-25].

62. During her engagement with VIP, Cruz complained to VIP client, A.G.M., that Cruz was "owed hours." [Affidavit of A.G.M. at 1, Ex. G; Deposition of McKinnon, Ex. F, at p. 9-15, p. 112 ln. 11-17].

63. At least two of VIP's clients, C.I. and Y.I., "switched" to Sininani when Cruz changed jobs to Sininani. [Deposition of Cruz, Ex. D, at p. 41 ln. 16-17; Deposition of McKinnon, Ex. F, at p. 111 ln. 1-3].

64. During her engagement with VIP, Cruz communicated with the VIP clients, C.I. and Y.I., that Cruz was not getting paid and was going to another nurse registry to work. [Deposition of Cruz, Ex. D, at p. 42 ln. 20-25; Deposition of Ramirez, Ex. E, at p. 99 ln 12-17].

65. VIP then-clients, C.I. and Y.I., communicated to Cruz that they will leave VIP to follow Cruz to her new job while Cruz was contracted with VIP. [Deposition of Cruz, Ex. D, at p. 42 ln. 20-25, p. 43 ln. 19-22].

66. When Cruz was no longer working at VIP, she called VIP client, A.G.M., and informed her that Cruz was "going to another agency," and attempted to convince A.G.M. to follow her to her new job. [Affidavit of A.G.M. at 2, Ex. G].

67. Cruz "took" two clients of VIP with her to her new independent contractor job, and attempted to "take a third" client, A.G.M. [Deposition of McKinnon, Ex. F, at p. 109 ln. 9-18; Deposition of Cruz, Ex. D, at p. 41 ln. 12-19; Deposition of Ramirez, Ex. E, at p. 115 ln. 5-6].

68. As a result of Cruz' actions, the Defendants suffered monetary damages. [Deposition of McKinnon, Ex. F, at p. 118 ln. 2-20].

69. As a result of Cruz' actions, the Defendants suffered reputational harm, in part, by a negative Google review because of Cruz complaining that she was not getting paid to the client. [Deposition of McKinnon, Ex. F, at p. 63 ln. 508, p. 109 ln. 9-18, p. 112 ln. 18-23; Deposition of Ramirez, Ex. E, at p. 118 ln. 3-8; Affidavit of A.G.M, Ex. G].

Respectfully submitted:

*/s/ RANDY M. GOLDBERG, ESQUIRE*
Florida Healthcare Law Firm
151 NW 1st Avenue
Delray Beach, FL 33444
754-224-0867
FBN: 045187
randy@floridahealthcarelawfirm.com
randymgoldberg@gmail.com

## CERTIFICATION OF SERVICE

I hereby certify that a copy of this pleading which was filed with the Clerk of the Court was provided to Brian Pollock, Esq., Counsel for Plaintiff, at 135 San Lorenzo Ave., Ste. 770, Coral Gables, FL 33146, brian@fairlawgroup.com via the Court's ECM/ECF Portal on July 14, 2023

*/s/ RANDY M. GOLDBERG, ESQUIRE*
Florida Healthcare Law Firm
151 NW 1st Avenue
Delray Beach, FL 33444
754-224-0867
FBN: 045187
randy@floridahealthcarelawfirm.com
randymgoldberg@gmail.com