UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:22-CV-61553-DIMITROULEAS/HUNT

CRUZ VALDIVIESO FIGUERA,

    Plaintiff,

vs.

ALL VIP CARE INC. AND LIZ
VELAZQUEZ MCKINNON,

    Defendants.
_____/

## **PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

    Plaintiff, Cruz Valdivieso Figuera, by and through undersigned counsel, files this Statement of Material Facts in support of her Motion for Partial Summary Judgment. Plaintiff's Exhibits are labeled as follows: Ex. A, CR Depo. p.00:00; Ex. B, Ramirez Depo. p.00:00; Ex. C, Valdivieso Depo. p.00:00; Ex. D, Independent Contractor Agreement ("ICA"). ECF No. 37 from pages 22 to 46; Ex. E, Plaintiff's timesheet; Ex. F, Cesar Izique Patient Calendar, p.0; Ex. G, Screenshot of All VIP's webpage; Ex. H, Defendants' Answer to Plaintiff's Interrogatories Propounded upon Defendant McKinnon, p.0; Ex. I, Cesar Izique Google Review.

### **I. Introduction**

1. All VIP is a nurse registry. Ex. A, CR Depo. p. 27:10-12. (Liz McKinnon was designated as the corporate representative of All VIP).

2. All VIP administrator, Diana Ramirez, testified that Valdieveiso worked as a home health aide for All VIP. Ex. B, Ramirez Depo. p.42:22-24. Valdivieso also signed a series of hiring documents - collectively referred to as the "Independent Contractor Agreement" - on May 3, 2021, showing she applied to work as a home health aide (HHA). Ex. D, ICA. ECF No. 37 at pp. 23,31, and 36.

3. During the hiring process, All VIP informs HHAs that they will work as independent contractors who are not entitled to overtime if they work more than 40 hours in a week. Ex. A, CR Depo. p. 34:1-13, pp.36:21-37:6; Ex. B, Ramirez Depo. pp.17:15-18:14.

4. McKinnon testified that ALL VIP was established in 2016, and she has been the only owner since that time. Ex. A, CR Depo. p. 12:15-22.

### III. Argument: Section B:
### Ms. Valdivieso Entitled to Individual FLSA Coverage.

5. The majority of All VIP's clients are elderly people from 80 to 90 years old. Ex. A, CR Depo. p. 54:18-21.

6. McKinnon testified that All VIP provides medical and non-medical services to its clients. The medical services are provided by registered nurses and licensed practical nurses in and outside clients' homes. The non-medical services are provided by HHAs and certified nursing assistants (CNAs), collectively referred to as "caregivers". It is important to note that McKinnon referred to the medical services as "skilled" in comparison to the non-medical services. Ex. A, CR Depo. pp. 13:1-15:10.

7. McKinnon testified that non-medical services are personal care services such as bathing, dressing, transportation, meal preparation, homemaking, household duties, and companionship. Ex. A, CR Depo. pp. 13:1-15:10. All VIP's job description for HHAs and CNAs lists more duties including providing assistance with ambulation so the client can move within or outside the residence; assistance with shaving and with oral, hair, skin, and nail care; assistance with toileting; cleaning the bathroom, straightening the sleeping and living areas, and washing dishes or laundry. Ex. D, ICA. ECF No. 37 at pp. 42-43.

8. Companionship services require HHAs to keep clients mentally engaged to alleviate loneliness and depression through various activities ranging from conversation to playing card games. Ex. A, CR Depo. pp. 15:11-17:9.

9. All VIP provides timesheets to caregivers that have to be turned in to the office on a weekly basis. Ex. A, CR Depo. pp. 39:13-42:23; Ex. B, Ramirez Depo. pp.51:16-52:11.

10. The timesheets have a list of 39 activities the caregivers can check off to show which ones they performed with the clients. Ex. E, Plaintiff's timesheets. (The three timesheets in this exhibit are provided for illustration; they are not the entirety of all the timesheets Plaintiff ever completed while working for All VIP). Valdivieso also testified that her duties were to clean, give food, bathe, and wash clothes. Ex. C, Valdivieso Depo. pp.21:13-22:1.

11. Ramirez testified that she coordinates patient care with insurance companies for clients on Medicare, which results in the creation of a "patient calendar". The patient calendar

details the shifts that All VIP assigns to its caregivers and explains the services they will provide to the clients. Ramirez explained the designations on the patient calendar as follows: "PCA" stands for "personal care", "COMP" stands for "companionship", and "HMK" stands for "homemaking". Ex. B, Ramirez Depo. pp.73:13-76:25; Ex. F, Cesar Izique Patient Calendar, p.1.

### III. Argument: Section C:
### Ms. Valdivieso was an Employee of All VIP.

12. Ramirez ascertains the days and hours that All VIP clients need care, and then assigns work shifts to different caregivers on the client's patient calendar. Ex. B, Ramirez Depo. pp.45:20-47:15; pp.77:17-84:10. For example, All VIP assigned Plaintiff Valdivieso and another caregiver named Yenny Landa Peña to provide care to client Cesar Izique in consecutive shifts on Friday, July 1, 2022. Ex. F, Cesar Izique Patient Calendar, p.1. Valdivieso testified that the hours she worked were the ones given to her by All VIP. Ex. C, Valdivieso Depo. p.24:14-20; p.27:2-11. Valdivieso also testified that Jenny Landa worked the morning shift for Mr. Izique while she would work the night shift. *Id.* at p.51:6-12. Furthermore, Valdiveiso testified that Ramirez determined the hours of service that she provided to All VIP's clients. Ex. C, Valdivieso Depo. p.27:8-11.

13. Ex. D, ICA. ECF No. 37 at p.29.

14. All VIP used the timesheets submitted by the caregivers to process their payments. Ex. A, CR Depo. p. 42:10-23.

15. The Independent Contractor Agreement contains a "Covenant Not to Compete" section explaining that caregivers cannot arrange to work with All VIP's clients during the term of the contract and for at least one year thereafter. Ex. D, ICA. ECF No. 37 at p.29.

16. McKinnon stated that caregivers were not allowed to work for the client without the agency being aware because it violates their contract with All VIP. Ex. A, CR Depo. pp. 58:6-59:5. Likewise, Ramirez stated any private work that Ms. Valdiveiso performed for All VIP's clients was in violation of the contract. Ex. B, Ramirez Depo. pp.89:23-93:14.

17. The Statement of Commitment is a bulleted list detailing All VIP's policies and the adverse employment actions that would be taken against caregivers for violating the policies. Ex. D, ICA. ECF No. 37 at pp.28-29.

18. One of the bulleted policies states, "I will not send anyone else to the client's home to

complete my assignment and I will not take anyone with me to the client's home to assist me in completing my assignment. I acknowledge that violation of this policy is grounds for termination of my contract." Ex. D, ICA. ECF No. 37 at p.28. Ramirez also testified that caregivers could not find their own substitutes even if the substitute worked for All VIP. Ex. B, Ramirez Depo. pp.116:18-117:14.

19. McKinnon testified that "it's an appropriate [sic]" for All VIP caregivers to ask insurance companies to modify a client's care plan, and the caregivers are informed of this restriction when they apply for the job. Ex. A, CR Depo. pp. 20:22-21:20.

20. After All VIP determines what services a client needs, the agency asks caregivers if they are willing to provide the services in the client's care plan. A caregiver is free to accept or reject the offered assignment. Ex. A, CR Depo. pp. 80:16-81:8; Ex. B, Ramirez Depo. p.45:1-10.

21. Ms. Valdivieso negotiated with All VIP to be paid $13 an hour. Ex. A, CR Depo. p.75:6-15; Ex. B, Ramirez Depo. pp.42:11-43:13.

22. Ramirez explains All VIP's expectations of the caregivers at the time of hiring. Ex. B, Ramirez Depo. pp.17:15-19:10.

23. All VIP does not provide any equipment (such as phones, laptops, and scrubs) to its caregivers. Ex. A, CR Depo. pp.92:12-93:13. Caregivers are required to buy their own scrubs. Ex. A, CR Depo. pp.76:21-77:10. Rivera indicated that personal protective equipment was provided due to the pandemic, but the caregivers needed to have their own supplies. Ex. B, Ramirez Depo. p.130:11-25. However, Valdivieso contradicted Ramirez and said that All VIP never provided gloves and masks to her during the pandemic and she had to buy her own. Ex. C, Valdivieso Depo. p.26:2-12.

24. All VIP contracts with Medicaid to provide services to their clients. The Medicaid plans are administered by various health insurance companies. Ex. A, CR Depo. pp.78:23-80:9; Alternatively, some All VIP clients contract and pay the agency directly for care services without insurance. Ex. B, Ramirez Depo. pp.134:17-135:21.

25. All VIP has offices in West Palm Beach, Port St. Lucie, Pahokee, Miami, and Broward Counties. Each office has an administrator. Ex. A, CR Depo. pp.11:20-12:11. The Palm Beach County office has about 16 employees including a receptionist, office manager, alternate administrator, and in-office nurses and doctors. Ex. A, CR Depo. pp.23:5-24:14.

- 4 -

26. Valdivieso testified that she became a licensed HHA after receiving certification at a school certified by Florida. Ex. C, Valdivieso Depo. p.19:11-23. However, Ramirez testified that HHAs are not licensed. Instead, HHAs obtain certificates after completing 75 hours of training. Ex. B, Ramirez Depo. p.22:8-16. (The testimony is not in conflict. Ms. Cruz's understanding of the differences between licensing and certification has to be viewed within the context of the confusion in English/Spanish translation that is apparent in her deposition from pages 12 to 21).

27. Valdivieso began working for All VIP on May 3, 2021, and stopped working for them in July 2022 because they did not pay her for all the services she provided. Ex. C, Valdivieso Depo. pp.28:17-29:6. She signed the independent contractor agreement on May 3, 2021. Ex. D, ICA. ECF No. 37 at pp. 22 and 25.

28. Valdivieso worked as an HHA to at least four patients simultaneously and consecutively until her employment with All VIP ended and two All VIP clients transferred to her new place of employment. Ex. C, Valdivieso Depo. pp.33:18-34:20; pp.41:2-43:22.

29. The "Suspension and Termination" clause of the independent contractor agreement contemplates employment with caregivers "for successive one (1) year terms, unless sooner terminated …". Ex. D, ICA. ECF No. 37 at p. 35.

30. All VIP's website homepage explains that it is an "Elderly Home Health Care Service in Florida" that is "focused on providing high-quality home nursing service…". Ex. G, Screenshot of All VIP's webpage. *See* https://allvipcare.com. (Liz McKinnon appears as the Founder and CEO on the website's "Our Team" page at https://allvipcare.com/our-team.

### III. Argument: Section D.
### Liz McKinnon is Individually Liable under the FLSA

31. McKinnon has been the licensed administrator of All VIP's Palm Beach County office since 2016. Each of All VIP's offices are located in different counties, and they are required to have a licensed administrator assigned to each office. McKinnon stated that she runs the office as an employee of All VIP. Ex. A, CR Depo. pp.11:16-12:14. As administrator, she is responsible for making sure All VIP meets state and federal regulations. *Id.* at 24:9-14.

32. Ramirez is the administrator of the Broward County office. Ex. A, CR Depo. pp.11:5-8.

        As administrator, Ramirez is responsible for visiting clients, monitoring services provided by caregivers, and handling problems that occur out of the office. Ex. B, Ramirez Depo. pp.16:25-17:7.

33. McKinnon is also a care coordinator at the Palm Beach County office. Care coordinators assign caregivers to patients. Ex. A, CR Depo. pp.21:24-22:25.

34. The Palm Beach office has approximately 16 employees that serve in the following five (5) positions: receptionist, office manager, alternate administrator, care coordinator, and nurse. Ex. A, CR Depo. p.23:5-17.

35. McKinnon is Ramirez's direct supervisor. McKinnon does not micromanage every person that Ramirez hires, but she does conduct audits to determine if any caregivers were improperly hired. Ex. A, CR Depo. p.26:1-24.

36. McKinnon responded to a Google review written by an All VIP client (or the client's family member). Ex. I, Cesar Izique Google Review. She periodically monitors the Google reviews to make sure that her staff is doing their jobs. Ex. A, CR Depo. pp.61:7-63:11. Ramirez testified that she learned about Mr. Izique's Google review from McKinnon. Ex. B, Ramirez Depo. p.118:9-15.

37. In McKinnon's verified responses to Plaintiff's interrogatories, she stated that she is the chief executive officer (CEO) of All VIP, and that she is responsible for oversight and administration of all payroll obligations. Ex. H, Defendants' Answer to Plaintiff's Interrogatories Propounded upon Defendant McKinnon, pp.2-3.

38. McKinnon is responsible for filing taxes on behalf of All VIP, and her signature appears on tax documents. Ex. A, CR Depo. p.102:4-17.

39. McKinnon explained that she marks down the rate of pay a caregiver will receive on their employment contract during the hiring process. Ex. A, CR Depo. pp.70:15-71:25.

40. Valdivieso visited the Palm Beach office and complained to McKinnon that she was not being paid correctly. McKinnon addressed the concern by writing Valdivieso a manual check. Ex. A, CR Depo. pp.44:11-46:11; pp.63:12-64:9; Ex. C, Valdivieso Depo. pp.39:3-17.

41. Ramirez and Cruz made the decision to terminate Valdivieso's employment. Ex. B, Ramirez Depo. p.134:1-5.

*[Certificate of Service on following page]*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically on July 18, 2023 with the Clerk of Court using the CM/ECF filing system.

                                                *s/*Toussaint Cummings, Esq.
Toussaint Cummings, Esq. (119877)
toussaint@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Tel:     305.230.4884
*Counsel for Plaintiff*