UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CRUZ VALDIVIESO FIGUERA,  CASE NO: 0:22-CV-61553-WPD

          Plaintiff,

v.

ALL VIP CARE, INC., & LIZ
VELAZQUEZ McKINNON,

          Defendants.
_____/

### DEFENDANTS' REPLY STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT

The Defendants, ALL VIP CARE, INC. ("VIP") and LIZ VELAZQUEZ McKINNON, ("McKinnon") (collectively referred to as the "Defendants"), pursuant to and in accordance with Fed. R. Civ. P. 56 and the Southern District of Florida's Local Rule 56.1(a) hereby file and submit their Reply Statement of Material Facts in support of their Reply to Plaintiff, CRUZ VALDIVIESO FIGUERA ("Cruz"), Response to Defendants' Amended Motion for Summary Judgment (ECF No. 75) and states as follows:

### Additional Facts

70. Undisputed. However, Cruz had the right to accept or reject her hours or a particular job to provide services to VIP clients. [ECF No. 58 - Def. Am. SOMF at ¶ 21-22].

71. Disputed. The timesheets listed the scope of services Home Health Aides ("HHAs") and Certified Nursing Assistant ("CNAs") approved by the Florida Agency for Health Care Administration ("AHCA"), which the HHA and CNA marked which services they provided according to the client needs. [Depo. of McKinnon, ECF No. 58-1, Def. Ex. F, at p. 40 ln. 3-7, p. 41 ln. 6-25].

1

72. Disputed. The client's health insurer, Medicare, or Medicaid plans[1] authorizes the hours assigned by VIP to provide HHA services to the client. [Depo. of Ramirez, ECF 58-1 - Def. Ex. E, at p. 51 ln. 6-11; Depo. of McKinnon, ECF No. 58-1, Def. Ex. F, at p. 19 ln. 22-25, p. 20 ln. 19-21, p. 39 ln. 9-12].

73. Undisputed.

74. Undisputed. However, the requirement to turn in the timesheets to VIP was so that VIP could submit the timesheets to the client's health insurer, Medicare, or Medicaid plans for reimbursement so that HHAs, like Cruz, can be paid in accordance with the health insurer authorized hours. [Depo. of McKinnon, ECF No. 58-1, Def. Ex. F, at p. 42 ln. 18-23, p. 53 ln. 12-25; Depo. of Ramirez, ECF No. 58-1, Def. Ex. E, at p. 59 ln. 1-6].

75. Undisputed.

76. Undisputed.

77. Disputed. Cruz was explained her obligations as independent contractor because she did not understand English. [Def. SOMF at ¶50; Depo. of Ramirez, ECF No. 58-1, Def. Ex. E, at p. 26 ln. 21-25, p. 27 ln. 5-19].

78. Disputed. Plaintiff mischaracterizes the line of questioning cited in the Depo. of Ramirez. Caregivers, such as Cruz, are required to contact VIP if they could not work certain hours that were on their schedule "so that [VIP] can find **a substitute** for them to fill in those hours" that were previously agreed by Cruz to work. [Depo. of Ramirez, ECF No. 58-1, Def. Ex. E, at p. 116 ln. 18-25] (Emphasis Added). This does not have any bearing on whether Cruz was allowed to send anyone *with* her to provide her services to clients.

79. Disputed. This is duplicative of Plaintiff's Statement of Material Facts number 71.

---

[1] Plaintiff correctly assumes that the term "payor" refers to Medicaid, and any other health insurer plan of VIP clients. *See* Def. Reply to Pl. Resp. to Def. Mot. Summ. J. at 2.

*See* Def. RSOMF at ¶ 71.

80. Undisputed. However, VIP did not prevent Cruz from having other employment or contractual relationships not involving VIP clients. *See* Def. RSMOF at ¶ 34.

81. Undisputed.

82. Disputed that HHAs do not obtain a license as opposed to a certification. [Depo. of Cruz, ECF No. 58-1, Def. Ex. D, at p. 12 ln. 24-25, p. 12 ln. 1-4]. To be eligible for contracting with VIP as an HHA, Cruz had to obtain other certifications, such as her HIVA certificate, CEU, CPR certificate, and medication management certificate as required by Florida law. [Depo. of McKinnon, ECF No. 58-1, Def. Ex. F, at p. 27 ln. 14-23].

83. Undisputed.

84. Disputed. Non-medical services also include "assisting with prescribed range of motion exercises", "measuring intake and output fluids," "measuring temperature, pulse, respiration or blood pressure," "keeping records of personal health care activities," and "provide[] assistance with a client's self-administration of medication." [ICA, ECF No. 58-1, Def. Ex. C, at 000022].

85. Undisputed.

86. Undisputed.

87. Undisputed. However, HHAs must maintain "continuing education" and a "current CPR certification" to contract with VIP. [ICA, ECF No. 58-1, Def. Ex. C, at 000021]; *see also* Def. RSOMF at ¶¶ 82, 84 above. Thus, Cruz' work required different certifications training, and other skills. *Id.*

88. Undisputed.

89. Disputed. Cruz worked with three clients simultaneously. [Depo. of Cruz, ECF No.

58-1, Def. Ex. C, at p. 34 ln. 11-13].

90. Disputed. The "Suspension and Termination" clause contemplates the "*contractor* relationship term of the contract "for successive one (1) year terms, unless sooner terminated. . .." ICA, ECF No. 58-1, Def. Ex. C, at 000014] (Emphasis Added).

91. Disputed. VIP made the decision to end its contractual relationship with Cruz because Cruz was working unauthorized hours and expecting payment from the client's Medicaid plan for such unauthorized payments, and was logging hours she did not work. [Depo. of Ramirez, ECF No. 58-1, Def. Ex. D, at p. 67 ln. 1-21, p. 134 ln. 1-5].

92. Disputed. VIP serves as the middleman between the client and the insurance company as a nurse registry and connects the caregiver to the client as the client's employee. [Depo. of McKinnon, ECF No. 58-1, Def. Ex. F, at p. 27 ln. 12-13, p. 33 ln. 23-25].

93. Undisputed.

94. Disputed. Ramirez, not VIP nor VIP's corporate representative, referred to a caregiver as HHAs, CNAs, and nurses for purposes of the Depo. of Diana Ramirez. [Depo. of Ramirez, ECF No. 58-1, Def. Ex. E, at p. 21 ln. 3-5].

95. Undisputed.

96. Undisputed.

97. Disputed. Rowland had a problem with VIP because Cruz was not paid for unauthorized hours during Cruz' contracting relationship with VIP after Cruz complained about this alleged non-payment. [Depo. of Ramirez, ECF No. 58-1, Def. Ex. E, at p. 67 ln. 1-21, p. 43 ln. 9-15]. Cruz' first language is Spanish and telling then-VIP clients C.I. and Y.I. (the "Izique's") "had multiple caregivers." [Depo. of McKinnon, ECF No. 58-1, Def. Ex. F, at p. 89 ln. 23; Depo. of Cruz, ECF No. 58-1, Def. Ex. D, at p. 43 ln. 23-25].

98. Undisputed.

99. Disputed. McKinnon also learned about Cruz telling the Izique's to leave VIP from Ramirez, and the client's Humana plan's confirmation of Cruz taking VIP clients. [Depo. of McKinnon, ECF No. 58-1, Def. Ex. F, at p. 115 ln. 14-18, p. 116 ln. 19-25].

100. Disputed. *See* Def. RSMOF at ¶ 99.

101. Undisputed. However, the Iziques stated that they were sorry for Cruz as a result of Cruz misrepresenting that VIP did not want to pay Cruz to the point where Cruz kept threatening the clients. [Depo. of Ramirez, ECF No. 58-1, Def. Ex. E, at p. 99 ln. 1-11; Depo of Cruz, ECF No. 58-1, Def. Ex. D, at p. 42 ln. 16-25, p. 43 ln. 1-4].

102. Undisputed.

103. Undisputed.

104. Disputed. When Cruz was no longer working at VIP, she called VIP client, A.G.M., and informed her that Cruz was "going to another agency," and attempted to convince A.G.M. to follow her to her new job. [Affidavit of A.G.M., ECF No. 58-1, Def. Ex. G, at 2].

105. Undisputed.

106. Undisputed.

107. Disputed. Cruz communicated with the Izique's, that Cruz was not getting paid and was going to another nurse registry to work. In response, the Izique's stated that they "are leaving VIP also, then." [Depo. of Cruz, ECF No. 58-1, Def. Ex. D, at p. 42 ln. 20-25, p. 43 ln. 19-22; Depo. of Ramirez, ECF No. 58-1, Def. Ex. E, at p. 99 ln. 12-17]. These conversations occurred while Cruz was in a contractual relationship with VIP. *Id.*

108. Undisputed.

109. Undisputed.

Respectfully submitted:

*/s/ RANDY M. GOLDBERG, ESQUIRE*
Florida Healthcare Law Firm
151 NW 1st Avenue
Delray Beach, FL 33444
754-224-0867
FBN: 045187
randy@floridahealthcarelawfirm.com
randymgoldberg@gmail.com

## CERTIFICATION OF SERVICE

I hereby certify that a copy of this pleading which was filed with the Clerk of the Court was provided to Toussaint Cummings, Esq., Counsel for Plaintiff, at 135 San Lorenzo Ave., Ste. 770, Coral Gables, FL 33146, toussaint@fairlawattorney.com via the Court's ECM/ECF Portal on August 7, 2023.

*/s/ RANDY M. GOLDBERG, ESQUIRE*
Florida Healthcare Law Firm
151 NW 1st Avenue
Delray Beach, FL 33444
754-224-0867
FBN: 045187
randy@floridahealthcarelawfirm.com
randymgoldberg@gmail.com