UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CRUZ VALDIVIESO FIGUERA,                    CASE NO: 0:22-CV-61553-WPD

                Plaintiff,

v.

ALL VIP CARE, INC., & LIZ
VELAZQUEZ McKINNON,

                Defendants.

_____/

**DEFENDANTS' AMENDED REPLY TO PLAINTIFF'S RESPONSE
TO DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT**

The Defendants, ALL VIP CARE, INC. ("VIP") and LIZ VELAZQUEZ McKINNON,

("McKinnon") (collectively referred to as the "Defendants"), pursuant to and in accordance with

Fed. R. Civ. P. 56, S.D. Fla. L.R. 56.1(a), and this Court's Order (ECF No. 78), hereby file and

submit their Reply to Plaintiff, CRUZ VALDIVIESO FIGUERA ("Cruz"), Response to

Defendants' Amended Motion for Summary Judgment (ECF No. 74) and states as follows:

**I.**      **CRUZ' FLSA CLAIM FAILS**

**A. The Undisputed Facts Favor Cruz as an Independent Contractor Under the
Economic Realities Test**

Cruz fails to dispute the material facts that favor her as an independent contractor with VIP

under the Economic Realities Test. Even in the material facts disputed by Cruz, the record provides

sufficient support to render Cruz' disputed facts unsuccessful. Further, Cruz' cited cases are

distinguishable to the instant matter. As such, this Court should find that Cruz is an independent

contractor within the meaning of the Fair Labor Standards Act. 29 U.S.C. §201, et seq. (the

"FLSA"), and is not entitled to relief.

i.      *VIP as Nurse Registry Had Limited Control, as Cruz' work was limited by the client, the client's insurer, and Cruz' acceptance of the work assigned.*

Cruz' comparison with the facts in *Scantland v*. *Jeffry Knight*, *Inc*., 721 F.3d 1308, 1311 (11th Cir. 2013) are distinguishable. Unlike in *Scantland*, the extent that VIP coordinated client needs and authorization with Cruz' hours is restricted by the authorization of VIP client's health insurers.[1] *See* Def. SOMF at ¶17.[2]  Those hours are then provided to Home Health Aides ("HHAs"), like Cruz, who have the power to reject or accept those hours under her own control. *See* Def. SOMF at ¶¶ 21-22, 27; Pl. Resp. SOMF at ¶¶21-22, 27.[3] Cruz' contracted payment was based on the work she agreed to accept to service clients and the health insurer's approval and authorization. *See* Def. SOMF at ¶13; Pl. Resp. SOMF, ECF 75, at ¶13.

It is undisputed that VIP client's health insurers "limit the number of visits that [VIP] clients have with all VIP caregivers," such as Cruz, and the insurers determine the hours that a client is authorized to provide a service, not VIP. *See* Def. SOMF at ¶17; Pl. Resp. SOMF at ¶17. It is also undisputed that Cruz, and not the Defendants, provides the client with a timesheet for the client's authorization. *See id.* at ¶¶ 18. The asserted "control" were requirements of the client's health insurer so that Cruz could be paid for her authorized services. VIP was merely the middleman between the health insurer, the client, and HHAs such as Cruz.

The same is true for Cruz' timesheet and client health insurer authorized scope of services. Cruz' payment depended on the client's health insurer authorization (Def. RSOMF at ¶72),

---

[1] For purposes of Defendants' Amended Motion for Summary Judgment and the instant Reply, Plaintiff correctly assumes that "payor" means a health insurer, included Medicare and Medicaid plans, that pay for the services rendered to an insured client. *See* Pl. Resp. SOMF (ECF No. 75) at fn. 3.  Defendants request this Court adopt the same definition as clarification to the term "payor."

[2] Defendants' Amended Statement of Undisputed Material Facts in Support of Motion for Summary Judgment, ECF No. 58, is referred to as "Def. SOMF" for purposes of this Reply.

[3] Plaintiff's Statement of Material Facts in Support of Response to Defendant's Amended Motion for Summary Judgment, ECF No. 75, is referred to as "Pl. Resp. SOMF" for purposes of this Reply. Defendants' Reply Statement of Material Facts is referred to as "Def. RSOMF" for purposes of this Reply.

necessitating the submission of the timesheets to VIP, so that VIP could submit the services for reimbursement. *See* Def. SOMF at ¶ 13; Pl. Resp. SOMF at ¶13. VIP merely exercised the amount of control, if any, required by the client's health insurer for reimbursement and by Florida law, and was limited by Cruz' acceptance or rejection of an authorized job. Importantly, VIP merely facilitates the hours authorized for Cruz' choosing, and the client is the one who confirms that the Caregiver did her job by signing off on the timesheet. *See* Def. SOMF at ¶18; Pl. Resp. SOMF at ¶18. The control asserted by Plaintiff is from the client and the client's health insurer, not VIP.

Caregivers, such as Cruz, are required to contact VIP if they could not work certain hours that were on their schedule so that VIP could find *a substitute* to work hours that were previously agreed by Cruz to work. *See* Def. RSOMF at ¶78. VIP's services consisted of working in tandem as the middleman between the client and the client's insurer to ensure the authorized services were adequately performed to VIP clients. VIP had a separate obligation to the health insurer and to the client, but did not have the control over Cruz to support that she was an employee.

Despite the reimbursement requirements by the client's health insurer, Cruz was still able to reject and accept any job authorized by the health insurer. Once accepted, Cruz was required (not by VIP) to maintain her services under the approved care plan to receive reimbursement for those hours worked. Cruz had an obligation as a contractor to abide by the client and client's health insurer's authorization. By balancing the "Control Factor," the undisputed facts show that Cruz had the ultimate control of her work as an independent contractor.

ii.   *Cruz was Free to Limit or Accept the Authorized Hours and had Control of her Financial Opportunities and Destiny*

Despite Cruz' assertions, Cruz was in full control of her financial opportunities and destiny. If Cruz wanted, she could have rejected all hours, or worked all hours. *See* Def. SOMF at ¶21-22; Pl. Resp. SOMF at ¶21-22. Evidently, Cruz did not reject any hours authorized by the client and

client insurer and was in control of her financial opportunities by accepting all hours. This was a result of her exercising her managerial skills to maximize her earnings. Cruz now seeks relief for an alleged non-payment of unauthorized and unworked hours. *See* Def. RSOMF at ¶91.

Cruz has substantial opportunity to realize profit and loss on the basis that she is free to limit her jobs by rejecting hours. Cruz does not dispute that she had the ability to terminate a client relationship if she "wants to continue or not." *See* Def. SOMF at ¶27; Pl. Resp. SOMF at ¶ 27. It is further undisputed that Cruz' pay was conditioned by her own agreement to accept service to clients. *See* Def. SOMF at ¶13, Pl. Resp. SOMF at ¶ 13. Thus, the profit and loss she would earn was in her own hands. This Court should find this factor in favor of Defendants, as Cruz was in control with her financial opportunities and destiny.

### iii.     *Cruz, and Cruz Alone, was Responsible for her own Equipment and Materials*

Cruz asserts that, because Cruz made no "appreciable" investment, that this factor should be in her favor. *See* Pl. Resp. Def. Am. Mot. Summ. J., ECF No. 74, at 10. Cruz, however, does not dispute that VIP provided "nothing" in terms of equipment to perform Cruz' services to a client. Def. SOMF at ¶35; Pl. Resp. SOMF at ¶35. This includes travel costs. *Id.* at ¶36. As an independent contractor, Cruz was required to supply herself with *all* the necessary materials to perform her services.

*Chapman v. A.S.U.I. Healthcare & Dev. Ctr.* is distinguishable from the instant action.  562 F. App'x 182 (5th Cir. 2014). Unlike Chapman, VIP is a registered nurse registry with Florida and was required to maintain its HHAs as an independent contractor, *supra*. *See id.* at 184 (the defendants in *Chapman* were "healthcare providers" as opposed to a staffing agency like VIP). Further, unlike *Chapman,* VIP does not operate a daytime facility for the clients' daytime use. *Id.* at 185. In fact, most of the investments made by the Defendant in *Chapman* does not apply to VIP.

While VIP had to maintain its license and contract with the state as a nurse registry, Cruz also had obligations to the state as an HHA independent contractor.

By evaluating the undisputed facts, Cruz was solely responsible for equipment and materials required to complete her tasks. *See Dimingo v. Midnight Xpress, Inc.*, 325 F.Supp.3d 1299, 1313 (S.D.Fla., 2018) (plaintiff was independent contractor because he provided "his own uniform, badge, security license, and handgun"). Cruz was therefore an independent contractor.

iv.   *Cruz' Work Required Many Different Skills and Certifications*

Cruz' work required a special skill to perform her services as an independent contractor HHA. To assert that "anybody could perform" the skills needed to perform her services as an HHA is a mischaracterization of the services Cruz rendered to clients. *See* Pl. Resp. Mot. Summ. J.

To be eligible for contracting with VIP as an HHA, Cruz had to obtain other certifications, such as her HIVA certificate, CEU, CPR certificate, and medication management certificate as required by Florida law. *See* Def. RSOMF at ¶87.[4]  Cruz' non-medical services also included "assisting with prescribed range of motion exercises", "measuring intake and output fluids," "measuring temperature, pulse, respiration or blood pressure," "keeping records of personal health care activities," and "provide[] assistance with a client's self-administration of medication." *See* Def. RSOMF at ¶84. Further, Cruz was required to maintain "continuing education" and a "current CPR certification" to contract with VIP. *See* Def. RSOMF at ¶87.

Accordingly, because Cruz was required to obtain and maintain many of certifications and continuing education to be even qualified as an HHA, this factor supports that Cruz as an independent contractor of VIP.

---

[4] While Cruz disputes that HHAs are certified as opposed to licensed, Cruz does not dispute the extensive certifications and requirements needed to be contracted as an HHA. *See* Pl. Resp. SOMF at ¶ 41.

v.      *Cruz' Degree of Permanency with VIP was Minimal*

Cruz fails to show that she had permanence in her contracting relationship with VIP. It is undisputed that Cruz was contracted with VIP for a little over a year. *See* Def. SOMF at ¶ 56; Pl. Resp. SOMF at ¶56. Cruz also does not dispute that she now works with another nurse registry as an independent contractor shortly after the termination of her contractual relationship with VIP. *See* Def. SOMF at ¶ 57; Pl. Resp. SOMF at ¶57. However, as discussed fully below, VIP made the decision to end its contractual relationship with Cruz because Cruz was working unauthorized hours and expecting payment from the client's Medicaid plan for such unauthorized payments, and was logging hours she did not work. *See* Def. RSOMF at ¶ 91. Nonetheless, coupled with the short time Cruz worked at VIP, Cruz' degree of permanency with VIP was minimal because Defendants place no restrictions preventing from working with other Nurse Registries or other companies and Cruz is not required to work any specific days or times. Pl. Resp. SOMF at ¶34.

vi.     *VIP Does Not Provide Care, it is a Staffing Agency*

Despite Cruz' assertions, VIP as nurse registry is a staffing agency that serves as the middleman between the client and health insurer as a nurse registry and connects the caregiver to the client as the client's employee. *See* Def. RSOMF at ¶92. VIP also provides administrative tasks corresponding with its staff agency requirements. *See* Def. SOMF at ¶ 48; Pl. Resp. SOMF at ¶48. VIP is a staffing agency, not a provider of home care or healthcare related services like Cruz.

The cases cited by Cruz are also distinguishable. Unlike VIP, the defendant in *Mason v. Pathfinders for Independence* was a "home healthcare company," not a nurse registry staffing agency. 2022 WL 1092238, at *5 (M.D.Fla., 2022). Unlike nurse registries, Florida law requires that home health agencies employ their caregivers and are more involved with home care. *See* F.A.C. 59A-8.008. The Florida Agency for Health Care Administration ("AHCA") further

provides that home health agencies, such as the defendant in *Mason*, are agencies that "provides skilled services (by nurses, therapists, social workers) and/or unskilled services (by home health aides, certified nursing assistants, homemaker, companions) to patients in their homes."[5] VIP as a nurse registry is fundamentally different to the defendant in *Mason*.

Further, in *Solis v. A? Nursetemps, Inc.*, the alleged employees in that action involved nurses, unlike Cruz who is a licensed HHA.  2013 WL 1395863, at *1 (M.D.Fla.,2013). It is undisputed in this action that VIP contracts with medical and non-medical personnel and connects those personnel to the clients. *See* Pl. Resp. SOMF at ¶83-84. Nurses, as opposed to HHAs, play a more integral part of a nurse registry because these nurses provide medical care to the clients at the client's home or at hospitals in accordance with the client's care plan from the client's doctor. The difference in analysis of an HHA, like Cruz, and nurses, like the parties in *Solis*, significantly changes based on the arrangement between the different levels of providers.

Notwithstanding the distinctions, Defendants sufficiently show the undisputed facts that the economic reality of Cruz' relationship with VIP is that she was an independent contractor and not entitled to relief under the FLSA. This Court should therefore grant Defendants' Amended Motion for Summary Judgment.

**B.  The Independent Contractor Agreement**

While the independent contractor agreement ("ICA") is not decisive to the independent contractor analysis, Defendants submit that *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488 (11th Cir.

---

[5] *See* Agency for Health Care Administration, Home Health Agencies, https://ahca.myflorida.com/health-care-policy-and-oversight/bureau-of-health-facility-regulation/laboratory-and-in-home-services/home-health-agencies. Notably, AHCA defines a nurse registry, like VIP, as an "agency that offers health care related contracts for nurses, home health aides, certified nursing assistants, homemakers, and companions in a patient's home and as temporary staff to health care facilities." *See* Agency for Health Care Administration, Nurse Registries, https://ahca.myflorida.com/health-care-policy-and-oversight/bureau-of-health-facility-regulation/laboratory-and-in-home-services/nurse-registries (Emphasis Added).

1993) stands for the proposition that the parties' intent shown in such an agreement is probative and sheds light on the requirements of VIP to hire Cruz as an independent contractor. *See id; Ashkenazi v. S. Broward Hosp. Dist.*, 607 F. App'x 958 (11th Cir. 2015). The terms of the ICA are undisputedly rife with the parties' obligations as an independent contractor (Pl. Resp. SOMF at ¶¶ 6, 7, 10, 11, 55). However, as stated above and in Defendants' Amended Motion for Summary Judgment, the economic realities of the parties favor Cruz as an independent contractor. This Court should therefore grant Defendants' Amended Motion for Summary Judgment.

## C. Defendants Would Be in Violation of Florida Law and Subject to Administrative Fines

There is no dispute that VIP is a duly licensed Florida licensed Nurse Registry. *See* Def. SOMF at ¶1; Pl. Resp. SOMF at ¶1. The purpose of a nurse registry is the referral of HHAs and other "caregivers" who register with VIP to provide health care related services to clients who request to engage the HAA's services once the nurse registry facilitates the introduction. *See* F.A.C. 59A-18.002(10). Under Florida Statutes Chapter 408, Part II, § 408.801 et seq.; § 408.802(15) and § 400.506, VIP was required to contract with Cruz as an HHA independent contractor. *See* Fla. Stat. §§400.506 and 400.462. Failure to do so, and to maintain certain requirements such as monitoring the client services to ensure compliance with such regulations, would result in the State charging VIP a "hefty fine" and even shutting VIP down. *See id.;* Depo. of McKinnon, ECF No. 58-1 Def. Ex. E, at p. 34 ln. 20-25. Because VIP had a legal obligation to have Cruz as an HHA independent contractor in the face of administrative disciplinary action, and that *Solis* is distinguishable from the instant action, *supra*, Defendants request that its Amended Motion for Summary Judgment be granted.

Defendants maintain that "Cruz is not entitled to relief under the FLSA" because Cruz fails to satisfy the six factors in the Economic Realities Test. *See* Def. Mot. Summ. J. at 5, 7. As stated

above, the analysis of the economic realities of the parties through the undisputed facts show that Cruz was an independent contractor, not an employee of VIP. While the ICA and VIP's obligations under Florida law are probative to the limits to the arrangement between Cruz and VIP, Defendants show that Cruz cannot be an employee under the FLSA by the economic realities analysis.

## II.    DEFENDANTS' BREACH OF CONTRACT CLAIM

### A.  Cruz Caused the Iziques and Melendez to Leave VIP

The basis for Defendants' breach of contract claim is admitted to by Cruz herself. Cruz explains how she communicated with then-VIP clients, C.I. and Y.I. (collectively, the "Iziques"), that she was not being paid by VIP for hours that she did not work and hours that were not authorized by the Iziques' health insurance plan. *See* Def. RSOMF at ¶91; Def. SOMF at ¶65. Cruz explains further that, while she was still contracting with VIP, the Iziques responded that they would "leave VIP also, then" because of Cruz' false statement regarding non-payment from VIP. *See* Def. SOMF at ¶65. She continues, "I left [VIP] and then applied to a different agency; and then 15 days afterwards, they arrived and requested me. They are my patients currently." *See* Def. SOMF at ¶65. These are all statements made by Cruz on her admission to breaching the contract, causing damages to Defendants. Plaintiffs cannot now assert that Cruz did not cause the Izique's to leave VIP.

Further, When Cruz was no longer working at VIP, she called VIP client, A.G.M., and informed her that Cruz was "going to another agency," and attempted to convince A.G.M. to follow her to her new job. *See* Def. RSOMF at ¶104. The Affidavit of Melendez explains both how (1) Cruz asked Melendez to join Senior Nannies and (2) logged unauthorized and inaccurate hours in breach of the ICA. The "threat" that was cited to in Def. SOMF paragraph 61 was from Ramirez' sworn testimony, and not fabricated as Cruz asserts. *See* Pl. Resp. Mot. Summ. J. at 18. By

evaluating the affidavit of A.G.M and the sworn statements of Ramirez, this Court should find that Cruz breached the ICA by her conduct.  Because the facts overwhelmingly support Cruz own admitted conduct that breached the ICA, this Court should grant summary judgment in Defendants' favor.

The confidential information divulged in the form of the arrangement between HHAs and VIPs, the method of payment (as Cruz could not accept payment from client insurer unauthorized hours) and the nuances of private hours to the Iziques and A.G.M. As stated above, the cited "threat" Defendants referred to was from Ramirez' sworn statements, and A.G.M.'s affidavit speaks for itself. This is not a fabrication as Cruz seems to believe. VIP's corporate representative explained the damages that flowed from Cruz' admitted conduct and communication. *See* Def. SOMF at ¶68. As such, Defendants' Amended Motion for Summary Judgment should be granted.

### III.     CONCLUSION

The application of the Economic Realities test clearly establishes that Cruz was not economically dependent on the Defendants, and Cruz was clearly in the business for herself. Based on the undisputable facts and arguments presented by the Defendants, this Court should grant the Defendants' Amended Motion for Summary Judgment and find that Cruz is not entitled to relief under the FLSA, as she is an independent contractor. The facts also show that Cruz breached the material terms of the ICA that led to damages suffered by Defendants. Therefore, this Court should grant summary judgment in Defendants' favor.

Respectfully submitted:

*/s/ RANDY M. GOLDBERG, ESQUIRE*
Florida Healthcare Law Firm
151 NW 1st Avenue
Delray Beach, FL 33444
754-224-0867
FBN: 045187

randy@floridahealthcarelawfirm.com
randymgoldberg@gmail.com

**<u>CERTIFICATION OF SERVICE</u>**

I hereby certify that a copy of this pleading which was filed with the Clerk of the Court

was provided to Toussaint Cummings, Esq., Counsel for Plaintiff, at 135 San Lorenzo Ave., Ste.

770, Coral Gables, FL 33146, toussaint@fairlawattorney.com via the Court's ECM/ECF Portal on

August 11, 2023

<u>*/s/ RANDY M. GOLDBERG, ESQUIRE*</u>
Florida Healthcare Law Firm
151 NW 1st Avenue
Delray Beach, FL 33444
754-224-0867
FBN: 045187
randy@floridahealthcarelawfirm.com
randymgoldberg@gmail.com