UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:22-CV-61553-DIMITROULEAS/HUNT

CRUZ VALDIVIESO FIGUERA,

    Plaintiff,

vs.

ALL VIP CARE INC. AND
LIZ VELAZQUEZ MCKINNON,

    Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE is before the Court on Defendants' Amended Motion for Summary Judgment [DE 57]. The Court has carefully considered the Motion, Plaintiff's Response [DE 74], Defendants' Reply [DE 79], the statements of material facts [DE's 58, 75, 80], the evidence submitted in the record, and is otherwise fully advised in the premises. For the reasons explained below, the Court will grant in part and deny in part Defendants' summary judgment motion.

**I. BACKGROUND[1]**

The parties to this action are Plaintiff Cruz Valdivieso Figuera ("Plaintiff"), Defendant All VIP Care, Inc. ("VIP"), and Defendant Liz Velazquez McKinnon ("McKinnon" and together with VIP, "Defendants"). VIP is a licensed and certified nurse registry in the State of Florida that hires individuals who perform medical services for clients, such as registered nurses, and others

---

[1] All statements in the Background section are derived from uncontested portions of the parties' respective Statements of Material Facts and supporting materials, unless otherwise noted.

1

who perform non-medical services for clients, such as home health aides. DSOF ¶¶ 1,5; PSOF ¶¶ 1, 5.[2] McKinnon is the corporate representative and owner of VIP. DSOF ¶ 3; PSOF ¶ 3.

On May 3, 2021, Plaintiff began performing services for VIP as a home health aide. DSOF ¶ 6; PSOF ¶ 6. VIP classified Plaintiff as an "independent contractor" under the Independent Contractor Agreement Plaintiff signed. DSOF ¶¶ 6–7, 9–11; PSOF ¶¶ 6–7, 9–11. VIP paid Plaintiff $13.00 per hour of work she agreed to accept to service clients, and the client's insurer determined the number of authorized hours. DSOF ¶¶ 13, 17; PSOF ¶¶ 13, 17. Plaintiff would provide the client with a timesheet for the client's signature, and VIP would send the timesheet to the client's insurer for payment. DSOF ¶¶ 18, 20; PSOF ¶¶ 18, 20, 74, 76; DRSOF ¶ 74, 76. The parties vehemently dispute whether Plaintiff logged hours in her timesheet that she did not work and whether VIP paid Plaintiff for all the hours she worked. *Compare* DSOF ¶ 52–53, DRSOF ¶ 91 *with* PSOF ¶¶ 52–53, 91.

The Independent Contractor Agreement prohibited Plaintiff from arranging work with VIP's clients during the term of the contract and for at least one year thereafter, and from transferring or attempting to transfer any client case to another nurse registry agency or facility. DSOF ¶¶ 54–55; PSOF ¶¶ 54–55, 80; DRSOF ¶ 80. The Independent Contractor Agreement also required Plaintiff to notify VIP if a client attempts to arrange for services directly with Plaintiff. DSOF ¶ 55; PSOF ¶ 55. Plaintiff stopped working for VIP in July 2022. DSOF ¶ 56; PSOF ¶¶ 56, 88; DRSOF ¶ 88. Less than one year later, Plaintiff began working with another nurse registry. DSOF ¶ 57; PSOF ¶ 57. The parties strongly dispute whether Plaintiff solicited VIP's

---

[2] Defendants' statement of material facts and Plaintiff's response thereto include various citations to portions of the record. Defendants' Statement of Material Facts [DE 58] is cited as ("DSOF"), Plaintiff's Response [DE 75] is cited as ("PSOF"), and Defendants' response to Plaintiff's additional facts [DE 80] is cited as ("DRSOF"). Any citations herein to the statement of facts and response thereto should be construed as incorporating those citations to the record.

clients to follow her to her new job, whether Plaintiff divulged confidential information to the clients during her solicitation, and whether Plaintiff failed to report communications with the clients relating to the solicitation. *Compare* DSOF ¶¶ 61, 63, 65–69, DRSOF ¶ 104 *with* PSOF ¶¶ 61, 63, 65–69, 104.

On August 22, 2022, Plaintiff initiated this action against Defendants. *See* [DE 1]. On October 28, 2022, Plaintiff filed her Second Amended Complaint, the operative complaint, asserting five claims against Defendants, including three claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*: Count I – FLSA Minimum Wage Violation(s) against Defendants; Count II – FLSA Overtime Wage Violation(s) against Defendants; Count III – Breach of Contract against Defendant VIP; Count IV – Unjust Enrichment against Defendant VIP; and Count V – Retaliation in Violation of the FLSA against Defendants. *See* [DE 23]. Plaintiff seeks minimum wage damages, time-and-half overtime pay, liquidated damages, compensatory damages, interest, costs, and attorneys' fees. *Id.*

On January 28, 2023, Defendants filed their Amended Answer, Affirmative Defenses, and Counter-Complaint against Plaintiff. *See* [DE 37]. The Counter-Complaint, brought on behalf of Defendant VIP, asserts the following four claims against Plaintiff: Count I – Breach of Contract; Count II – Promissory Estoppel; Count III – Violation of Florida's Trade Secrets Act; and Count IV – Tortious Interference with Contractual Relationship. *Id.* Defendants have now filed a Motion for Summary Judgment, seeking judgment in their favor on Counts I, II, and V[3] of the Second Amended Complaint and judgment in Defendant VIP's favor on Count I of the Counter-Complaint. *See* [DE 57].

---

3 The summary judgment motion erroneously refers to Plaintiff's FLSA retaliation claim as Count III. The FLSA retaliation claim is Count V. *See* [DE 23].

## II. STANDARD OF REVIEW

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26–27 (citing *Anderson*, 477 U.S. at 252). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

## III. DISCUSSION

Defendants move for summary judgment as to Plaintiff's FLSA claims (Counts I, II, and V) and Defendant VIP's breach of contract counterclaim (Counterclaim Count I). First, Defendants argue that they are entitled to summary judgment on all Plaintiff's FLSA claims because Plaintiff is an independent contractor, and not an employee, under the FLSA. Second, Defendants argue that they are entitled to summary judgment on Plaintiff's FLSA retaliation claim because, even assuming Plaintiff qualifies as an employee under the FLSA, Plaintiff fails to establish a *prima facie* case of retaliation. Third, Defendant VIP[4] argues that summary judgment is proper on its breach of contract counterclaim because the undisputed evidence establishes that Plaintiff breached material terms of the Independent Contractor Agreement by soliciting VIP's clients to follow Plaintiff to her new job, divulging confidential information, and failing to report communications regarding client solicitation.

In her Response, Plaintiff concedes that she cannot carry her burden to prove her FLSA retaliation claim. *See* [DE 74] at p. 14. Accordingly, the Court will grant Defendants' motion as to Count V. The Court will now analyze Defendants' remaining arguments, in turn.

### A. Whether Plaintiff is an Employee or an Independent Contractor Under the FLSA

"To determine whether an individual falls into the category of covered 'employee' or exempted 'independent contractor,' courts look to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013). "This inquiry is not governed by the label put on the relationship by the parties or the contract

---

[4] The summary judgment motion erroneously argues that both Defendants are entitled to summary judgment on their breach of contract counterclaim. *See* [DE 57] at pp. 18–20. The counterclaim is only brought on behalf of Defendant VIP. *See* [DE 37] at ¶¶ 18–28

controlling that relationship, but rather focuses on whether the work done, in its essence, follows the usual path of an employee." *Id.* (internal quotation marks omitted). Various courts have considered the following list of factors to guide the economic reality inquiry:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
>
> (4) whether the service rendered requires a special skill;
>
> (5) the degree of permanency and duration of the working relationship; and
>
> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Id.* at 1311–12. Nonetheless, these factors are non-exhaustive, and no individual factor is controlling. *Id.* at 1312. Rather, economic dependence is the overarching determinative factor, and "ultimately, in considering economic dependence, the court focuses on whether an individual is in business for himself or is dependent upon finding employment in the business of others." *Id.* (internal citations and quotation marks omitted). Although "[a] determination of employment status under the FLSA is a question of law reviewed *de novo*," *see id.* at 1310, summary judgment on the issue may be unwarranted if questions of material fact remain as to the plaintiff's economic dependence. *See Arias v. Alphine Towing, Inc.*, No. 10–CV–20434–PCH, 2011 WL 11073004, at *9 (S.D. Fla. Feb. 8, 2011).

To support her claim that she was economically dependent on and thus an employee of Defendants, Plaintiff relies on evidence purportedly exhibiting the following facts:

- VIP coordinates patient care with insurance companies for clients through a patient calendar and assigns works shifts to caregivers, PSOF ¶¶ 70–73;

6

- VIP required Plaintiff to submit a weekly timesheet reflecting the hours she worked and the tasks she performed each shift, which VIP used to process payments, DSOF ¶ 18; PSOF ¶¶ 74–76;

- VIP forbids caregivers like Plaintiff from asking insurance companies to modify a client's care plan, PSOF ¶ 25;

- The Independent Contractor Agreement contains a "Statement of Commitment," which details VIP's policies and the adverse employment actions that will be taken against caregivers for violating the policies, including numerous grounds for termination, PSOF ¶ 31;

- Among other things, VIP required Plaintiff to wear identification during assignments and to notify the nurse registry if she could not make an assignment, PSOF ¶ 31;

- VIP prohibited Plaintiff from making or accepting personal phone calls at a client's home, accepting money or gifts from clients, and working with clients during the term of the contract and for at least one year thereafter, PSOF ¶¶ 31, 80–81;

- Plaintiff made minimal investment in equipment or materials to complete work for Defendants, investing only in gloves, masks, and travel expenses. Defendants, on the other hand, contracted with Medicaid or directly with their clients to provide services, and operated several local offices with personnel staff throughout Florida, DSOF ¶ 36; PSOF ¶¶ 108–09;

- Working as a home health aide did not require any special skills on Plaintiff's part, PSOF ¶¶ 83–87;

- VIP employed Plaintiff for over a year, Plaintiff regularly accepted assignments with VIP, and the Independent Contractor Agreement contemplates employment with caregivers designated as "independent contractors" for successive one-year terms, PSOF ¶¶ 88–91;

- VIP's primary business is to provide medical and non-medical care to elderly clients through services like those offered by Plaintiff, DSOF ¶ 5; PSOF ¶¶ 26, 93.

Defendants, however, point to other evidence to support their position that Plaintiff was not economically dependent on Defendants and thus an independent contractor:

- When hired by VIP, Plaintiff was classified as an "independent contractor," DSOF ¶¶ 7, 10–12;

7

- VIP did not prevent Plaintiff from having other employment or contractual relationships, did not provide training to Plaintiff, and did not provide performance evaluations to Plaintiff, DSOF ¶¶ 34, 37–40;

- Plaintiff had the discretion to accept or reject any individual job for any of Defendants' clients or to terminate a relationship with a client, and VIP merely served as a middleman between Plaintiff, the client, and the client's insurer, DSOF ¶¶ 5, 21–22, 27–28, 30, 35; DRSOF ¶ 92;

- VIP merely facilitated the hours authorized for Plaintiff's choosing and only required Plaintiff to log hours so that authorized payments from the client's insurer were properly made to the corresponding client-approved hours, DSOF ¶¶ 17–20, 32, 48;

- Plaintiff was responsible for paying for her own liability insurance, and Plaintiff performed services in the clients' homes and not at VIP's facilities, DSOF ¶¶ 26, 33;

- Defendants provided nothing in terms of equipment to Plaintiff and Plaintiff was not required to wear a VIP logo or name on her scrubs while performing services, DSOF ¶¶ 35–36, 43–45;

- As a home health aide, Plaintiff was required to maintain various certificates, including a HIVA certificate, CPR certificate, and medication management certificate, DSOF ¶ 41; DRSOF ¶ 87;

- Less than a year after the termination of the parties' contractual relationship, Plaintiff contracted with another nurse registry, DSOF ¶ 57;

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that there are genuine disputes of material fact as to Plaintiff's economic dependence on Defendants. A reasonable jury could find that Plaintiff controlled her own work and that Defendants merely acted as a middleman between Plaintiff, the client, and the client's insurance company, which could support a conclusion that Plaintiff was in business for herself and not economically dependent on Defendants. Alternatively, a reasonable jury could find that Plaintiff was primarily dependent upon employment in Defendants' business. Accordingly, because the question of economic dependence cannot be resolved at this stage, the Court cannot grant summary

judgment in Defendants' favor as to the issue of whether Plaintiff was an employee or an independent contractor under the FLSA.

Defendants' remaining arguments do not alter the Court's analysis. Defendants argue that the written agreement between the parties is highly probative of the fact that Plaintiff was an independent contractor. However, "putting on an 'independent contractor' label does not take the worker from the protection of the Act." *Rutherford Food Corp.,* 331 U.S. 722, 730 (1947); *see also Scantland*, 721 F.3d at 1311. Defendants also argue that they are statutorily barred by Florida law from hiring caregivers, including home health aides like Plaintiff, as employees. But "a worker may be an independent contractor under other laws or for purposes of contractual relationships, yet still meet the definition of an employee under the FLSA." *Solis v. A+ Nursetemps, Inc.,* No. 5:07–CV–182–OC–10PRL, 2013 WL 1395863, at *4 (M.D. Fla. Apr. 5, 2013). It therefore follows that any characterization of home health aides "as independent contractors under state law, by statute or otherwise, has no bearing upon whether an individual is an employee for purposes of the FLSA." *Id.* at *5. Accordingly, the Court will not grant summary judgment in favor of Defendants on this basis.

**B. Whether VIP is Entitled to Summary Judgment on its Breach of Contract Counterclaim**

In its breach of contract counterclaim, VIP alleges that Plaintiff materially breached the restrictive covenants contained in Plaintiff's agreement with VIP by engaging in a direct or indirect relationship with a client of VIP, failing to report Plaintiff's relationship with the client to VIP, failing to report communications regarding client solicitation, soliciting VIP's patients, divulging VIP's confidential information, trade secrets, and other proprietary information to VIP's clients and/or third parties, and/or using VIP's confidential information, trade secrets, and other proprietary information for Plaintiff's personal benefit. *See* [DE 37] at ¶¶ 18–28. Defendant

VIP contends that the Court should grant summary judgment in its favor on its breach of contract counterclaim because the undisputed evidence establishes that Plaintiff breached material terms of the Independent Contractor Agreement by soliciting VIP's clients to follow Plaintiff to her new job, divulging confidential information, and failing to report communications regarding client solicitation. Plaintiff denies that she solicited VIP's clients to leave VIP and argues that there is no evidence that she divulged confidential information.

Under Florida law, "[t]he elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lizard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999); *see also Am. Aeronautical Corp. v. Aviation Engine Serv., Inc.*, 2013 WL 1499353, at *2 (S.D. Fla. Apr. 10, 2013). Here, having examined the evidence in the record, the Court finds that VIP is not entitled to summary judgment because there are genuine issues of material fact over whether Plaintiff materially breached the Independent Contractor Agreement, including whether Plaintiff solicited VIP's clients to leave VIP and whether Plaintiff divulged confidential information.[5] For example, questions of fact remain over whether Plaintiff solicited C.I. and Y.I. (collectively, the "Iziques") to leave VIP or whether the Iziques left VIP on their own accord. *Compare* DSOF ¶ 67 *with* PSOF ¶ 67. Moreover, even assuming there are no material issues of fact regarding whether Plaintiff materially breached the Independent Contractor Agreement, VIP would nonetheless not be entitled to summary judgment because there are genuine issues of material fact over whether VIP's claimed damages were proximately caused by Plaintiffs' purported breaches. Accordingly, the Court will deny Defendants' motion for summary judgment as to VIP's breach of contract counterclaim.

---

5 The Court notes that with respect to divulging confidential information, VIP does not clearly explain which terms of the contract Plaintiff allegedly breached.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Amended Motion for Summary Judgment [DE 57] is **GRANTED IN PART AND DENIED IN PART** as set forth above;

2. The Court will enter final judgment following the conclusion of the jury trial in this matter; and

3. The parties are reminded that their Joint Pretrial Stipulation is due by **Friday, October 6, 2023**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 5th day of September, 2023.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of Record