UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:22-CV-61553-DIMITROULEAS/HUNT

CRUZ VALDIVIESO FIGUERA,

      Plaintiff,

vs.

ALL VIP CARE INC. AND LIZ
VELAZQUEZ MCKINNON,

      Defendants,

_____/

**REPLY SUPPORTING
PLAINITFF'S MOTION FOR SUPPLEMENTAL FEES**

## I.      INTRODUCTION

Defendants ask this Court to deny supplemental fees entirely, or reduce them to $8,325.00, on two principal grounds: (1) the post-judgment delays were caused by defense counsel's suspension, not by Defendants' conduct; and (2) Plaintiff's counsel held an uncashed $25,000 check while filing enforcement motions. Neither argument withstands scrutiny. The record tells a very different story: Defendants breached the Court-approved Settlement Agreement within weeks of signing it, cycled through a revolving door of defense counsel to prolong these proceedings, tendered a check marked "Final Payment" that contained a restrictive endorsement designed to extinguish Plaintiff's right to collect the very fees at issue—and when Plaintiff finally deposited that check, it bounced. Plus, Defendants never issued a satisfaction of judgment – the Court did – despite the Defendants' agreement to do so (as another object of enforcing the parties' agreement). Every enforcement motion Plaintiff filed was a direct and foreseeable consequence of Defendants'

own (mis)conduct, not their counsel's later suspension. The fees were necessarily incurred and are reasonable.

## II.    FACTUAL AND PROCEDURAL HISTORY

An accurate account of what occurred after the September 4, 2024, fee award is essential to evaluating Defendants' arguments. What Defendants provided, and what the Court knows, is a markedly different sequence of events that undermines the legitimacy of their arguments.

On September 4, 2024, the Court entered an Order awarding Plaintiff $149,073.91 in attorney's fees and taxable costs against All VIP Care, Inc. [ECF No. 182]. On September 26, 2024, Defendants signed a Verified Agreement and Release in which they agreed to deliver $50,000 to FairLaw Firm by no later than 4:00 p.m. on Friday, October 25, 2024, and expressly waived all defenses to Plaintiff's request for post-judgment attorney's fees and costs incurred since September 4, 2024, "other than timely payment/satisfaction." [ECF No. 188-2]. The Court accepted and approved the parties' Agreement the following day, September 27, 2024. [ECF No. 192]. Defendants did not pay the $50,000 by October 25, 2024, and did not contact Plaintiff's counsel before that deadline to indicate any delay. The Agreement's breach was immediate and unexcused. Equally immediate was the first of many bad-faith litigation tactics employed by Defendants: as early as October 2, 2024—just five days after the Court accepted the Agreement— Defendants' then-counsel, Ms. Perez of Perez Legal Group, refused to file the Satisfaction of Judgment required by the Agreement, demanding instead that Plaintiff first satisfy the $1,869.41 costs judgment entered against her. This was the first shot in what became a nearly year-long war of attrition.

On October 31, 2024, Plaintiff filed a Verified Motion for *Ex Parte* Final Judgment Following Default, one week after the missed payment deadline. Defendants responded by

challenging the validity of the Agreement (claiming "duress"), disputing whether the Court's fee award constituted an enforceable judgment, and seeking to dissolve the Writ of Execution—arguments the Court later rejected in full. [ECF No. 195].

In the months that followed, Defendants rotated through multiple layers of counsel: Ms. Perez filed a motion to withdraw as counsel in February 2025, citing irreconcilable differences—after Defendants had bypassed her to contact the Court directly, leading to two Orders of Improper Filing. Michael Alexander Hurckes entered his notice of appearance on March 14, 2025. On July 28, 2025, the same day as the scheduled hearing, Hurckes filed a motion to withdraw, citing "serious illness and ongoing professional incapacity." The Court denied the motion because Mr. Hurckes had failed to comply with the Court's directive to notify Defendants and file a notice of compliance. The Supreme Court of Florida issued its Emergency Order of Suspension against Mr. Hurckes on October 6, 2025, based on a pattern of client neglect and misconduct spanning 19 separate bar complaints.

The picture Defendants paint of a diligent Ms. McKinnon thwarted only by her suspended attorney is directly contradicted by the payment history. The third installment payment—Check No. 3397 for $25,000, issued January 17, 2025—was marked "Final Payment / Legal Fee" on its memo line, a restrictive endorsement that, if accepted, would have operated as an accord and satisfaction of Plaintiff's right to collect the very post-judgment enforcement fees at issue in this Motion. [ECF No. 242-1]. Because cashing the check would have precluded recovery of breach-enforcement fees, interest, and costs, Plaintiff's counsel appropriately declined to negotiate it.

### III.    ARGUMENT

**A.    <u>Defendants Conveniently Ignore The True Source Of Their Predicament.</u>**

The Defendants' stubborn refusal to honor their contractual commitments and their subsequent obfuscation are simply tactics to avoid responsibility. Lest they forget, they are in their current predicament because the Court awarded Plaintiff nearly $150,000 in attorney's fees and costs, and they were panic-stricken when they realized their business bank account had been garnished. Plaintiff and her counsel, although not legally required to do so, agreed to give the Defendants a payment plan and let them access the garnished funds. As no good deed goes unpunished, the Defendants failed to timely pay the remaining amount due under the Court-approved Agreement and also failed to file the Satisfaction of Judgment for the costs awarded against the Plaintiff. The fees Plaintiff is now pursuing are directly caused by that failure.

**B.    <u>Defendants Did Not Satisfy The Agreement Until Compelled.</u>**

Defendants claim that the post-judgment enforcement efforts "trace directly to the fact that defense counsel was unable to function" because of his suspension. This argument is factually incompatible with the billing records. Invoice #752 covers the period from October 2, 2024, through September 16, 2025. [ECF No. 233-1]. Mr. Hurckes was not suspended until October 6, 2025, and he did not appear in the case until March 14, 2025. [ECF No. 218]. All billing entries from October 2024 to mid-March 2025 were in response to actions taken by Defendants or their prior counsel, totally unrelated to Mr. Hurckes.

The enforcement proceedings in this period were not the product of an absentee defense attorney; they were the product of actively obstructionist Defendants taking futile positions. They refused to file the Satisfaction of Judgment for Plaintiff. [ECF No. 207-1]. Through counsel, they filed a motion for extension of time and challenged the validity of the Agreement as signed under

"duress." [ECF No. 199]. They disputed whether the fee award constituted a "final judgment" subject to execution. [ECF No. 206]. Defendants' formal Response in Opposition, filed November 28, 2024, advanced the same arguments—that the Agreement was the product of duress, that the Court had not entered a proper final judgment, and that the Writ of Execution should be quashed. [ECF No. 206]. Each of these positions required a response, a reply, legal research, and court filings—all of which appear in Invoice #752 and all of which were forced upon Plaintiff by Defendants' own litigation choices. [ECF No. 207].

Even after Mr. Hurckes entered his appearance, the enforcement work in Invoice #752 continued—not because Mr. Hurckes was doing anything harmful, but because the underlying breach remained unresolved and enforcement efforts were ongoing. It was not until August 1, 2025, that the Report and Recommendation confirmed the Defendants' breach(es) and entitling Plaintiff to additional fees, and not until September 2, 2025, that the Court entered Final Judgment of $25,045.19. [ECF Nos. 226, 231]. At that point—still one month before Mr. Hurckes' suspension—Plaintiff had no choice but to pursue collection on the new judgment. That collection work comprises nearly all of Invoice #807 [ECF No. 261].

## C.     The January 2025 Check Was Not Issued Free And Clear.

Defendants characterize Plaintiff as having "held" the January 2025 check while filing enforcement motions, suggesting bad faith. [ECF No. 271]. The record refutes this characterization entirely. First, the check bore a restrictive endorsement. The memo line read "Final Payment / Legal Fee," which would preclude undesigned counsel from accepting it without releasing the right to recover the post-judgment enforcement fees and costs that were the subject of the pending motions and Court-approved fee entitlement. Fla. Stat. §671201(10). Negotiating a check marked "Final Payment" would have risked extinguishing the right to seek the additional

fees incurred to address the Defendants' breaches of the Agreement by operation of accord and satisfaction—a significant legal risk that made cashing the check inappropriate without modification or court involvement. *See United Auto. Ins. Co. v. Rivero Diagnostic Ctr., Inc.*, 327 So. 3d 376, 381 (Fla. 3d DCA 2021).

**D.      Defendants Mistake Related Tasks For Block Billing.**

Defendants complain that Plaintiff engaged in "block billing" by including related tasks into a single billing entry. [*See e.g.*, ECF No. 271 at 8]. This is not what Courts consider to be "block billing" by any stretch of the imagination. "'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." *Ceres Envtl. Servs. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012). As this Court observed:

> [T]he mere fact that an attorney has included more than one task in a single billing entry is not, in itself, evidence of block-billing. When those tasks are intertwined, including a thorough description of the activities performed clarifies, rather than obscures, the record.

*Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1312 (S.D. Fla. 2009). In citing to *Williams*, this Court further observed:

> Therefore, block billing does not warrant a reduction where invoices are sufficiently detailed to apprise the court as to what the time was billed for, the time spent was reasonable for the work being performed, and "the entries are so well-detailed and informative that the lack of segregation does not interfere at all with the Court's task to determine the reasonableness of the time spent." *Spanakos v. Hawk Sys., Inc.*, 362 So. 3d 226, 242 (Fla. 4th DCA 2023) (quoting *Gay v. Brencorp, Inc.*, No. 3:09-CV-1002-J-JBT, 2013 U.S. Dist. LEXIS 81776, 2013 WL 2683156, at *3 (M.D. Fla. June 11, 2013)).

*Med-Stop, Inc. v. Vandutch, Inc. Vandutch USA, Inc.*, 2025 U.S. Dist. LEXIS 187795, at *32 (S.D. Fla. Sep. 24, 2025). The entries at issue sufficiently describe the work performed and reflect that the work was related, such that they did not constitute the type of "block billing" that warrants a reduction or renders the entries improper. *See* Johnston v. Borders, 36 F.4th 1254, 1287 (11th Cir.

2022) (finding problematic "lumping together of two or more unrelated tasks in a single billing entry" but also finding arbitrary reductions for this practice improper).

Review of the challenged entries confirms they describe related, intertwined litigation tasks—not an unrelated mishmash of work. For example, the October 31, 2024, entry for 3.20 hours describes researching and drafting the Motion for Final Judgment and the proposed Order, and emailing the Judge's chambers to submit them. Defendants object that these are "discrete" tasks, but they are logically sequential steps in a single litigation action—no attorney would research a motion, draft it, and then stop before preparing the corresponding proposed order and transmitting it to chambers. These are hallmarks of efficient, contemporaneous billing, not impermissible aggregation.

**E.      Defendants Make Arguments Without Requisite Support.**

Defendants object to the rate(s) sought by Ms. Valdevieso without complying with the requirement imposed by Local Rule 7.3(a), requiring an affidavit attesting to their counsel's hourly rates for this matter. While the CPI reflects the increase attributable to the passage of time, it does not address the increased experience of counsel, all of which were accounted for by the Courts to have awarded the undersigned $550/hour. They go on to argue that certain tasks, such as conducting research by consultation with The Florida Bar's Ethics Hotline, writing letters, and engaging in settlement negotiations, are not compensable – but without citing any supportive authority. *But see* Local Rule 7.3(a) ("Within fourteen (14) days after service of the motion, the respondent shall describe with reasonable particularity each time entry or nontaxable expense to which it objects, both as to issues of entitlement and as to amount, and shall provide supporting legal authority.") Likewise, Defendants contest other entries – such as drafting letters, emails, and

documents filed with the Court – as noncompensable, despite the requirement that such tasks be handled by an attorney.

Moreover, the characterization of communications about enforcement as "settlement negotiations" fundamentally mischaracterizes the nature of the work. When a defendant is in material breach of a court-approved settlement agreement, correspondence demanding compliance with the Agreement is enforcement work—not negotiation of a new deal. The Agreement expressly obligated Defendants to perform specific acts. When they refused, counsel's communications were directed at compelling contractual performance, not renegotiating its terms. That distinction matters under the FLSA's fee-shifting framework, which is designed to make plaintiffs whole for the full cost of enforcement.

Similarly, the 4.60 hours spent on November 11, 2024, researching and beginning to draft a sanctions motion were compensable work that directly informed the legal strategy employed in subsequent filings and in the July 28, 2025, hearing. (Plaintiff does not seek fees for drafting the unfiled motion for sanctions). Counsel's assessment of available remedies—including sanctions— is, however, a necessary part of evaluating how to respond to bad-faith breach conduct.

The two-year gap since the prior award, combined with documented South Florida inflation and the elevated nature of the work, supports an adjusted rate above $450.00. The Saperstein award of $550.00 for FLSA work supports a rate of at least $550.00 for the commercial enforcement work at issue here.

## F.     <u>**Proportionality Is Irrelevant (But Still Favors Plaintiff)**</u>

Defendants improperly raise a proportionality argument in the context of a breach of contract matter. Plaintiff initially received an attorney's fee award because she prevailed on the breach of contract claim brought by Defendant, All VIP Care Inc [ECF No. 182]. Defendants

then entered into the Agreement, which, likewise, contained a prevailing party fee provision. [ECF No. 182-1]. Prevailing on a breach of contract claim does consider proportionality, as doing so would preclude prevailing Defendants (who recover nothing) from recovering their fees.

> [T]he parties presumably knew the economic value of the contract at the time they agreed to the attorneys' fee provision. By adding the provision, the parties voluntarily placed upon one another a set of risks and rewards to govern their future conduct, including any decision to bring future litigation. The Court will not alter the parties' economic calculus, after the fact, by reducing the fee award based upon lack of proportion. To do so would be to undo the bargain the parties voluntarily struck for themselves at the outset.

*Innovative Veh. Sols. W., LLC v. Renntech, Inc.*, 2024 U.S. Dist. LEXIS 10319, at *5 (S.D. Fla. Jan. 17, 2024). The measure of attorney's fees is not in proportion to the amount(s) recovered, but the results obtained. Herein, Plaintiff recovered the remainder of the amount owed, interest, and an order satisfying the judgment against her – *i.e.*, complete success – and represents significant success which required litigation through April 2026.

### G.     The Multiplier Is Warranted.

Plaintiff took this case on a purely contingent basis against employers who had threatened to sue Plaintiff to enforce restrictive covenants, deterring other counsel from accepting the representation. Defendants forced a jury trial, took an appeal they subsequently abandoned, and then breached the Court-approved settlement. Plaintiff's counsel was required to litigate the breach through multiple rounds of enforcement motions, hearings, garnishments, and contempt proceedings—all on a contingent basis, with no guarantee of payment. The exceptional delay in payment of fees—now spanning nearly three years from the trial verdict—and the unjustified nature of that delay support the requested enhancement. The "exceptional circumstances" standard in *Perdue v. Kenny A.*, 559 U.S. 542 (2021), is satisfied when, as here, the lodestar does not

fully compensate counsel for the risk of non-payment and the exceptional time invested in post-judgment enforcement caused entirely by Defendants' contumacious conduct.

## IV. CONCLUSION

Plaintiff requests that the Court award the additional fees and costs incurred since the rendition of the initial/original fee award on September 4, 2024 [ECF No. 182], due to the additional time, effort, and expenses necessarily and reasonably incurred, including the additional 5.5 hours incurred in reviewing the Defendants' Response [ECF No. 271] and in researching and drafting this Reply.

Respectfully submitted this 10th day of April 2026,

s/Brian H. Pollock, Esq.
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, FL 33146
Tel:     305.230.4884
*Counsel for Plaintiff*